JOSEPH J. NOTOPOULOS *v.* STATEWIDE
GRIEVANCE COMMITTEE
(AC 24702)

Foti, Schaller and Dranginis, Js.

Argued April 22—officially released October 5, 2004

*Joseph J. Notopoulos,* pro se, the appellant (plaintiff).

*Christopher L. Slack,* assistant bar counsel, for the appellee (defendant).

FOTI, J. The plaintiff, Joseph J. Notopoulos, appeals from the judgment of the trial court dismissing in part his appeal from the reprimand issued to him by the defendant, the statewide grievance committee (committee). The committee had affirmed the decision of its reviewing committee, reprimanding the plaintiff for violating rules 3.5, 8.2 and 8.4 of the Rules of Professional Conduct. On appeal to this court, the plaintiff claims that the trial court improperly (1) concluded that there was clear and convincing evidence that he violated rule 8.2 (a), (2) concluded that there was clear and convincing evidence that he violated rule 8.4 (4), and (3) applied General Statues § 45a-63 to him. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. The plaintiff, an attorney, filed an application with the Probate Court for the district of West Hartford seeking appointment as the conservator of his mother's estate and person. The court, *Berman, J.*, appointed the plaintiff as conservator of his mother's estate, Denny Fuller as conservator of her person and Carolyn Levine to investigate her care and financial assets. The plaintiff had many disagreements with Judge Berman, including a disagreement regarding the fees of Levine and Fuller and one regarding a do not resuscitate order issued to Fuller. On May 29, 1999, the plaintiff's mother died, and the plaintiff and his brother were appointed coexecutors of her estate. Thereafter, the plaintiff claimed that he did not receive timely notice of the probate decree closing his mother's estate. The plaintiff wrote a letter to Renee Bradley, a member of the court staff, and sent copies of this letter to his brother and his mother's physician.[1]

---

[1] The letter states in relevant part: "Having come face-to-face during conservator proceedings with the rampant financial conflicts of interest that presently afflict the West Hartford Probate Court, I found it prudent to

Bradley forwarded this letter to Judge Berman, who then filed a complaint with the committee, claiming that the plaintiff "attacked [him] and [his] court in a fashion that violates the spirit and letter of the Rules of Professional Conduct." The matter was referred to the grievance panel for the Hartford-New Britain judicial district, which found probable cause that the plaintiff violated rules 3.5, 8.2 and 8.4 of the Rules of Professional Conduct. At a hearing conducted by a reviewing committee, the plaintiff testified and pre-

---

completely distribute the assets of this estate at the earliest practicable moment . . . . Consequently, the assets of this estate have long ago been placed far beyond the venal and avaricious reach of the House of Berman-Levine, where those assets shall forever so remain. . . .

"It is hardly surprising that Mr. Berman is now some [five and one-half] months derelict in his obligation to execute Form PC-263 and close out this estate given the litany of abuses of his office that this family has been compelled to abide.

"Representative but hardly all-inclusive of these abuses is his reprehensible extortion from the [plaintiff], without legal authority, of money for his crony Mrs. Levine on January 25, 1999 resorting to threats to impose upon the undersigned a substantial conservator's cash bond or to dispatch a psychiatrist to our residence to examine my mother and bill the estate, giving no consideration to Medicare fraud since that entity would ultimately absorb the bill; his reckless and irresponsible interference with and impairment of the physician-patient relationship through this endorsement of Mrs. Levine's sleazy, financially motivated and medically discredited attacks on my late mother and my physician who is held in high esteem by his professional peers in the local medical community; his arrogant and contemptuous issuance of a decree in February 1999, which had to be amended at legal expense to this family, granting Mr. Fuller carte blanche authority to terminate my mother's life; and his placement of the financial greed of his cronies above my mother's best interest and welfare with utter contempt for applicable requirements of the Connecticut General Statutes to act in her best interest.

\* \* \*

"Because Mr. Berman has become not merely an embarrassment to this community but a demonstrated financial predator of its incapacitated and often dying elderly whose interests he is charged with the protection, in my capacity of a registered West Hartford elector, I am herewith demanding that he submit his resignation immediately rather than wait until compelled to do so next year by his advanced age that has seemingly impaired his ability to conduct his office with the integrity and competence that this community, including its physicians, may rightfully expect and demand."

sented evidence, but Judge Berman did not attend, and the committee did not present any additional evidence or call any witnesses. On February 22, 2002, the reviewing committee issued a decision reprimanding the plaintiff, finding, by clear and convincing evidence, that he violated rules 3.5 (3), 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct. On April 18, 2002, this decision was affirmed by the entire committee.

On May 6, 2002, the plaintiff appealed from the committee's decision to the Superior Court. In its memorandum of decision dated September 24, 2003, the court sustained the plaintiff's appeal as to rule 3.5 (3), but dismissed his appeal as to rules 8.2 (a) and 8.4 (4). This appeal followed.

"At the outset, we note that in reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. . . . Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence." (Internal quotation marks omitted.) *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 290, 715 A.2d 712 (1998).

I

The plaintiff first claims that the court improperly concluded that there was clear and convincing evidence that he violated rule 8.2 (a) of the Rules of Professional Conduct. Specifically, the plaintiff argues that (1) the committee did not submit any evidence at the hearing and, therefore, it did not meet its burden of proving by clear and convincing evidence that he violated rule 8.2

(a) and (2) rule 8.2 (a) is inapplicable because the plaintiff was not acting in his professional capacity as an attorney when he wrote the letter. We do not agree.

## A

The plaintiff first argues that he provided adequate evidence in support of his statements that Judge Berman extorted funds, and that, because this was the only evidence in the record, the committee failed to prove, by clear and convincing evidence, that he violated rule 8.2 (a) of the Rules of Professional Conduct. We do not agree.

We begin by noting that the plaintiff incorrectly states that the evidence he presented at the hearing was the only evidence in the record. Although the plaintiff was the only party to present evidence or to testify at the hearing, that does not make his evidence the only evidence in the record, nor does it preclude the committee's finding that there was clear and convincing evidence of the plaintiff's violation of rule 8.2 (a). Specifically, the plaintiff failed to note that the committee already had in the record evidence in support of its decision, including the grievance complaint with the plaintiff's answer, the plaintiff's letter to Judge Berman, Judge Berman's letter to the committee and documents from the probate proceedings upon which the plaintiff based the allegations contained in his letter. Furthermore, we note that the committee, as the fact finder, was free to weigh the plaintiff's evidence and to determine the credibility of his testimony; it was not required to accept it as the truth. We conclude therefore that the plaintiff's contention that the committee failed to meet its burden of proof is incorrect.

We next conclude that the court did not improperly conclude that there was clear and convincing evidence that the plaintiff violated rule 8.2 (a). Rule 8.2 (a) provides in relevant part: "A lawyer shall not make a state-

ment that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." Because the committee reasonably could have found that the statements contained in the plaintiff's letter were false in violation of rule 8.2 (a), the plaintiff must now provide evidence of an objective, reasonable belief that his statements were true.[2] See *Burton* v. *Mottolese*, 267 Conn. 1, 49–52, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). The plaintiff has not met that burden.

The plaintiff provided no factual basis for the statements contained in his letter. His sole argument on appeal is that, at the hearing, he presented evidence of Judge Berman's extortion of money for Levine, who the plaintiff claims was not legally entitled to the funds. Specifically, the plaintiff argues that his evidence

[2] The dissent argues that the committee did not meet its burden of proving, by clear and convincing evidence, that the statements contained in the plaintiff's letter were false in violation of rule 8.2 (a), thereby preventing the burden from shifting to the plaintiff to prove that he had an objective, reasonable belief that these statements were, in fact, true. Specifically, the dissent argues that "[t]he panel assumed, without having considered enough evidence to know, that the plaintiff's statements were false or reckless and thereby found a violation based on mere assumption, rather than on clear and convincing evidence." While we agree with the dissent regarding the appropriate shift of burden in this situation, we respectfully disagree with its conclusion that the committee did not meet its burden of proving, by clear and convincing evidence, the falsity of the plaintiff's statements. We conclude that the committee had before it evidence of the falsity of the plaintiff's statements adequate to shift the burden to the plaintiff to prove that he had an objective, reasonable belief that his statements were true. Specifically, we conclude that from Judge Berman's letter to the committee, which stated, inter alia, that the plaintiff "personally attacked [him] and [his] court in a fashion that violates the spirit and letter of the Rules of Professional Conduct," the committee could reasonably have concluded that Judge Berman believed the statements to be false. From this evidence, the committee reasonably could have concluded that the plaintiff's statements were, in fact, false and, therefore, in violation of rule 8.2 (a). As a result, we conclude that the burden now rests with the plaintiff to prove that he had an objective, reasonable belief that his statements were true.

proves that Judge Berman "personally" profited from this transaction by extracting $150 from Levine's fee as a probate fee. The plaintiff's argument is wholly conclusory and finds no support in the record. Evidence of extracting a probate fee does not prove that Judge Berman personally took these funds. The plaintiff failed to provide any evidence in support of his statement that Judge Berman extorted funds. Consequently, the court reasonably could have concluded that the plaintiff's statements were either knowingly false or made with reckless disregard as to their truth or falsity. Accordingly, the court did not improperly conclude that there was clear and convincing evidence that the plaintiff violated rule 8.2 (a).

## B

The plaintiff next claims that the committee improperly applied rule 8.2 (a) to him because he was acting in his individual capacity as a pro se party when he wrote the letter and not in his professional capacity as an attorney. We do not agree.

"The Rules of Professional Conduct bind attorneys to uphold the law and to act in accordance with high standards in both their personal and professional lives." *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 450, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001); see also *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 679, 646 A.2d 781 (1994); Rules of Professional Conduct, Preamble. A rule is applicable solely to attorneys acting in their professional capacity, however, where the language of the rule or its relevant commentary clearly suggests it. See *Somers* v. *Statewide Grievance Committee*, supra, 245 Conn. 287–88; *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 236, 578 A.2d 1075 (1990) (by its express terms, rule 4.2 of Rules of Professional Conduct, which proscribes communication between attor-

ney and represented party, applies only when attorney is representing client). Because there is no indication that rule 8.2 (a), either in its language or commentary, is applicable solely to an attorney acting in his or her professional capacity, we cannot conclude that the court improperly applied it to the plaintiff.[3]

## II

The plaintiff next claims that the court improperly concluded that there was clear and convincing evidence that he violated rule 8.4 (4), which prohibits lawyers from engaging in conduct that is prejudicial to the administration of justice. Specifically, the plaintiff argues that there was never any "administration of justice" involved in this matter. We decline to address the plaintiff's claim because we are not required to review claims that are inadequately briefed. The plaintiff's argument is based on nothing more than mere assertion devoid of any authoritative support or real analysis. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Anderson*, 67 Conn. App. 436, 441 n.8, 787 A.2d 601 (2001). For these reasons, we decline to review the plaintiff's claim.

## III

Lastly, the plaintiff claims that § 45a-63, which provides for the discipline of probate judges for improper conduct, did not require him to bring his complaints about Judge Berman before the Council on Probate

---

[3] We further note that even if we assume, arguendo, that rule 8.2 (a) applies only to attorneys acting in their professional capacity, it appears that the plaintiff was acting in such a capacity when he wrote the letter. Specifically, we note that the letter at issue was written on the plaintiff's professional letterhead, which contained his name, address, phone number and, in capital letters, "ATTORNEY AT LAW."

Judicial Conduct.[4] Specifically, the plaintiff claims that § 45a-63 violates his first amendment right to free speech. Because the plaintiff did not properly preserve his claim, we decline to review it.

"It is well established that generally this court will not review claims that were not properly preserved in the trial court. . . . [The plaintiff] may prevail on a claim of constitutional error not preserved at trial, however, if [he] satisfies the four part standard set forth in *State* v. *Golding*, [213 Conn. 233, 239–40, 567 A.2d 823 (1989)]." (Internal quotation marks omitted.) *State* v. *Laracuente*, 57 Conn. App. 91, 93–94, 749 A.2d 34, cert. denied, 253 Conn. 923, 754 A.2d 798 (2000); see also Practice Book § 60-5. The plaintiff, however, does not ask this court to review his claim pursuant to *Golding* or the plain error doctrine. See Practice Book § 60-5. "The [plaintiff's] failure to address the four prongs of *Golding* amounts to an inadequate briefing of the issue and results in the unpreserved claim being deemed abandoned." (Internal quotation marks omitted.) *State* v. *Laracuente*, supra, 94. For these reasons, we decline to review the plaintiff's unpreserved claim.

The judgment is affirmed.

In this opinion DRANGINIS, J., concurred.

SCHALLER, J., dissenting. I respectfully disagree with the majority, which affirms the trial court's dismissal of the appeal by the plaintiff, Joseph J. Noto-poulos, from the reprimand of the defendant, the statewide grievance committee. I do so without condoning the plaintiff's unnecessarily harsh and intemperate manner of criticizing the probate judge in question. I am compelled to dissent, however, because I believe

---

[4] The court, in its memorandum of decision, cited to § 45a-63 merely as a recommendation for a proper means by which the plaintiff could make his accusations against Judge Berman.

that the reviewing grievance committee's decision to reprimand the plaintiff, which the statewide grievance committee and the trial court affirmed, was based on inappropriate assumptions, inadequate evidence and improper procedures.

The majority has capably and accurately stated most of the important facts, procedural history and applicable law. The plaintiff's intemperate remarks in his letter to Renee Bradley are part of the record. As noted, Judge Berman filed a complaint with the statewide grievance committee (committee) by letter. Although he took offense at the plaintiff's remarks, it is significant, in terms of evidence, that he did not specifically refute the substance of the allegations or explain his actions, which the plaintiff had criticized. After several additional submissions to the committee, the matter proceeded to a hearing. Although, unquestionably, the committee has the burden of proving violations by clear and convincing evidence, it chose to call no witnesses and, instead, relied solely on the written record. The only witness to testify before the committee was the plaintiff, who explained and elaborated on his charges of misconduct against the probate judge.

At the outset, I note on the basis of our previous case law and as a matter of logic that multiple burdens of proof exist in this case. There exists, generally, a "burden of evidence," which is "[t]he duty of a party to proceed with evidence at the beginning, or at any subsequent state, of the trial, in order to make or meet a prima facie case. . . . This duty, otherwise, and perhaps more appropriately, called the burden of producing evidence, may arise at different stages of the trial, even be borne successfully once, only to arise again at a later stage . . . . [It is the burden of] making a prima facie showing as to each factual ingredient necessary to establish a prima facie case. Having done this, a plaintiff has discharged his burden of evidence, and the

burden shifts to the defendant to produce, if he desires, competent controverting evidence, which, if believed, will offset the plaintiff's prima facie case." (Citation omitted.) Ballentine's Law Dictionary (3d Ed. 1969). This is to be distinguished from the "burden of persuasion," that is "[t]he burden of convincing the jury or the court as the trier of the issue or issues of fact; the ultimate burden of proof." Id.

As I stated earlier, it is well settled that the committee bears the initial burden of evidence to prove the ethics violation by clear and convincing evidence. *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 698, 669 A.2d 1202 (1996). When the committee presents sufficient evidence to meet the burden, the burden of evidence shifts to the alleged violator. As the majority correctly notes, after the committee carries its burden, "[t]he plaintiff must . . . provide evidence of an objective, reasonable belief that his statements were true. See *Burton* v. *Mottolese*, 267 Conn. 1, 49–52, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004)." The plaintiff has no burden to carry until the committee presents clear and convincing evidence of the violation. Here, after the plaintiff provides evidence that he had an objective, reasonable belief that his statements were true, the burden shifts back to the committee to rebut that evidence and, ultimately, to carry its burden of persuasion and to convince the finder of fact of the truth of the claimed violation. See, e.g., *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 296–98, 715 A.2d 712 (1998) (holding that committee failed to carry its ultimate burden).

At this point, I depart from the majority's interpretation of the case. I focus on what the committee and the court considered to be the most serious charge against the plaintiff, that is, the plaintiff's claim of "extortion" on the part of the judge. Whereas I believe

it is likely that the plaintiff was using the word "extortion" in a colloquial sense—rather than making a charge, literally, of criminal extortion—the committee seemed to assume for purposes of its conclusions that the language meant, quite literally, criminal extortion. It thereupon determined that the plaintiff had not substantiated his charge and, therefore, either he made the statement knowing that it was false or made it with reckless disregard as to its truth or falsity. The plaintiff accused the judge of "reprehensible extortion from the [plaintiff], without legal authority, of money for his crony . . . ." If the plaintiff had intended to charge criminal extortion as such, the words "reprehensible" and "without legal authority" would be repetitive and irrelevant.

Even the committee recognized on some level the metaphoric and colloquial use of the term when it concluded that he had "likened this to criminal extortion." If, in fact, the plaintiff claimed that the judge's conduct was merely *likened* to criminal extortion, the plaintiff's explanations of his observations and conclusions that charging fees, "threatening" a mental examination of his mother and asserting that a substantial cash bond could be imposed were sufficient, in my view, to shift the burden of evidence back to the committee. Once the plaintiff offered some reasonable explanations of the conduct that he concluded was similar to extortion, the committee had the burden of persuasion on the issue. Clear and convincing evidence is a high standard indeed and rarely, if ever, can it be met without the committee producing some witnesses and more evidence than an equivocal letter. "[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces

in the mind of the trier *a reasonable belief that the facts asserted are highly probably true*, that the probability that they are true or exist is *substantially greater* than the probability that they are false or do not exist." (Emphasis added; internal quotation marks omitted.) *Somers* v. *Statewide Grievance Committee*, supra, 245 Conn. 290–91.

If the plaintiff's remarks about the probate judge were to be taken literally, as a claim of criminal extortion in violation of General Statutes § 53a-119 (5), I believe the same result would apply. Under § 53a-119 (5) (H), "[a] person obtains property by extortion when he compels or induces another person to deliver such property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will . . . use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely . . . ." The plaintiff's explanation that the judge threatened to impose a substantial cash bond or a mental examination of the plaintiff's mother unless the plaintiff paid certain fees could constitute criminal extortion.

Whether accepted ultimately, the plaintiff's testimony concerning the judge's conduct was sufficient, once again, to shift the burden of evidence to the committee. Once that testimony was offered, the committee, to meet its burden of persuasion by clear and convincing evidence, could not rely solely upon the plaintiff's assertions in his letter and the judge's brief complaint.

In this case, the committee rejected out of hand the plaintiff's assertions that the judge acted improperly. Given our prior cases, the proper procedure, after the plaintiff had testified as to the factual basis for his beliefs, was for the panel to call witnesses to explain

the judge's actions under the circumstances. The panel assumed, without having considered enough evidence to know, that the plaintiff's statements were false or reckless and thereby found a violation based on mere assumption, rather than on clear and convincing evidence.

Although the committee may well have weighed the evidence against the plaintiff's interests ultimately, in that event the decision at least would have been based on evidence rather than assumption. To assume lack of veracity merely because an attorney speaks harshly or even offensively about a judge's actions is not proper under any circumstances. *It is a simple matter, once some explanation is offered, to call a witness to rebut and explain.* I note that the record contains no clear and convincing documentary evidence explaining the judge's actions that the plaintiff cites in support of his statements. It would appear that the sole basis of the violation and reprimand was the committee's incredulous reaction to the plaintiff's statements; the committee lacked explanations, oral or documentary, as to why the probate judge did what he did.

Speech rights, qualified as they are under these circumstances, should not be treated so lightly as to determine violation of the Rules of Professional Conduct on the basis of assumption alone. Abusive and insulting remarks, however offensive and unwelcome they may be, cannot alone support a violation when an explanation is offered. For the foregoing reasons, I would reverse the judgment of the trial court. Accordingly, I respectfully dissent.