## JOSEPH J. NOTOPOULOS *v.* STATEWIDE GRIEVANCE COMMITTEE
### (SC 17341)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

219

Argued October 25, 2005—officially released February 14, 2006

*Joseph J. Notopoulos,* pro se, the appellant (plaintiff).

*Christopher L. Slack,* assistant bar counsel, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The plaintiff, Joseph J. Notopoulos, appeals following our grant of certification to appeal from the judgment of the Appellate Court affirming the trial court's judgment in favor of the defendant, the statewide grievance committee (committee).[1] The committee had reprimanded the plaintiff after he wrote a letter accusing a Probate Court judge of, inter alia, extorting money. The plaintiff appealed from the repri-

---

[1] We granted certification limited to the following issue: "Did the Appellate Court properly affirm the judgment of the trial court dismissing the plaintiff's appeal from his reprimand by the defendant, the statewide grievance committee?" *Notopoulos* v. *Statewide Grievance Committee,* 272 Conn. 917, 866 A.2d 1287 (2005).

mand to the trial court, which dismissed the appeal in part and sustained the appeal in part. The plaintiff claims on appeal that the Appellate Court, in affirming the trial court's judgment, improperly concluded that the committee reasonably could have found by clear and convincing evidence that the plaintiff had violated rules 8.2 (a)[2] and 8.4 (4)[3] of the Rules of Professional Conduct. He further claims that the committee's actions violated his first and fourteenth amendment rights under the United States constitution. We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts and procedural history. "The plaintiff, an attorney, filed an application with the Probate Court for the district of West Hartford seeking appointment as the conservator of his mother's estate and person. The court, *Berman, J.,* appointed the plaintiff as conservator of his mother's estate, Denny Fuller as conservator of her person and Carolyn Levine to investigate her care and financial assets. The plaintiff had many disagreements ·with Judge Berman, including a disagreement regarding the fees of Levine and Fuller and one regarding a do not resuscitate order issued to Fuller. On May 29, 1999, the plaintiff's mother died, and the plaintiff and his brother were appointed coexecutors of her estate. Thereafter, the plaintiff claimed that he did not receive timely notice of the probate decree closing his mother's estate. The plaintiff wrote a letter to Renee

---

[2] Rule 8.2 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ."

[3] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(4) [e]ngage in conduct that is prejudicial to the administration of justice . . . ."

Bradley, a member of the court staff, and sent copies of this letter to his brother and his mother's physician.[4]

"Bradley forwarded this letter to Judge Berman, who then filed a complaint with the committee, claiming that the plaintiff 'attacked [him] and [his] court in a

---

[4] The letter states in relevant part: "Having come face-to-face during conservator proceedings with the rampant financial conflicts of interest that presently afflict the West Hartford Probate Court, I found it prudent to completely distribute the assets of this estate at the earliest practicable moment . . . . Consequently, the assets of this estate have long ago been placed far beyond the venal and avaricious reach of the House of Berman-Levine, where those assets shall forever so remain. . . .

"It is hardly surprising that [Judge] Berman is now some [five and one-half] months derelict in his obligation to execute Form PC-263 and close out this estate given the litany of abuses of his office that this family has been compelled to abide.

"Representative but hardly all-inclusive of these abuses is his reprehensible extortion from the [plaintiff], without legal authority, of money for his crony Mrs. Levine on January 25, 1999 resorting to threats to impose upon the undersigned a substantial conservator's cash bond or to dispatch a psychiatrist to our residence to examine my mother and bill the estate, giving no consideration to Medicare fraud since that entity would ultimately absorb the bill; his reckless and irresponsible interference with and impairment of the physician-patient relationship through this endorsement of Mrs. Levine's sleazy, financially motivated and medically discredited attacks on my late mother and my physician who is held in high esteem by his professional peers in the local medical community; his arrogant and contemptuous issuance of a decree in February 1999, which had to be amended at legal expense to this family, granting Mr. Fuller carte blanche authority to terminate my mother's life; and his placement of the financial greed of his cronies above my mother's best interest and welfare with utter contempt for applicable requirements of the Connecticut General Statutes to act in her best interest.

\* \* \*

"Because [Judge] Berman has become not merely an embarrassment to this community but a demonstrated financial predator of its incapacitated and often dying elderly whose interests he is charged with the protection, in my capacity of a registered West Hartford elector, I am herewith demanding that he submit his resignation immediately rather than wait until compelled to do so next year by his advanced age that has seemingly impaired his ability to conduct his office with the integrity and competence that this community, including its physicians, may rightfully expect and demand." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, 85 Conn. App. 425, 427–28 n.1, 857 A.2d 424 (2004).

fashion that violates the spirit and letter of the Rules of Professional Conduct.' The matter was referred to the grievance panel for the Hartford-New Britain judicial district, which found probable cause that the plaintiff violated rules 3.5, 8.2 and 8.4 of the Rules of Professional Conduct. At a hearing conducted by a reviewing committee, the plaintiff testified and presented evidence, but Judge Berman did not attend, and the committee did not present any additional evidence or call any witnesses. On February 22, 2002, the reviewing committee issued a decision reprimanding the plaintiff, finding, by clear and convincing evidence, that he violated rules 3.5 (3), 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct. On April 18, 2002, this decision was affirmed by the entire committee.

"On May 6, 2002, the plaintiff appealed from the committee's decision to the Superior Court. In its memorandum of decision dated September 24, 2003, the court sustained the plaintiff's appeal as to rule 3.5 (3), but dismissed his appeal as to rules 8.2 (a) and 8.4 (4)." *Notopoulos* v. *Statewide Grievance Committee*, 85 Conn. App. 425, 427–29, 857 A.2d 424 (2004). In reaching this decision, the trial court suggested that the proper vehicle for bringing a complaint against a Probate Court judge is General Statutes § 45a-63.[5]

---

[5] General Statutes § 45a-63 provides in relevant part: "(a) The Council on Probate Judicial Conduct shall investigate every written complaint brought before it alleging conduct of judges of probate which may violate any law or canon of ethics applicable to judges of probate, or failure to perform properly the duties of the office, or conduct prejudicial to the impartial and effective administration of justice which brings the judicial office in disrepute, or final conviction of a felony or of a misdemeanor involving moral turpitude, or disbarment or suspension as an attorney-at-law, or the wilful failure to file a financial statement or the filing of a fraudulent financial statement required under section 45a-68. In making any such investigation the council may use the services of the Division of State Police within the Department of Public Safety, or any chief inspector, inspector or investigator in the Division of Criminal Justice, or may engage the services of private investigators if it deems such services necessary. . . .

"(e) The council shall, not later than three business days after the termination of such investigation, notify the complainant and the judge that the

On appeal to the Appellate Court, the plaintiff claimed that (1) the trial court improperly concluded that the committee, having failed to submit any evidence at the hearing, had met its burden of proving by clear and convincing evidence that he violated rule 8.2 (a) of the Rules of Professional Conduct; id., 429–30; and (2) "rule 8.2 (a) is inapplicable because the plaintiff was not acting in his professional capacity as an attorney when he wrote the letter." Id., 430.[6] The Appellate Court determined that, "[w]hile the plaintiff was the only party to present evidence or to testify at the hearing, that does not make his evidence the only evidence in the record . . . . [T]he committee already had in the record evidence in support of its decision, including the grievance complaint with the plaintiff's answer, the plaintiff's letter to Judge Berman, Judge Berman's letter to the committee and documents from the probate proceedings upon which the plaintiff based the allegations contained in his letter. Furthermore . . . the committee, as the fact finder, was free to weigh the plaintiff's evidence and to determine the credibility of his testimony . . . ." Id. The court further concluded that "there is no indication that rule 8.2 (a), either in its language or commentary, is applicable solely to an attorney acting in his or her professional capacity . . . ." Id., 433.

investigation has been terminated and whether probable cause has been found that judicial misconduct under subsection (a) has been committed. If the council finds that judicial misconduct under subsection (a) of this section has not been committed, but the judge has acted in a manner which gives the appearance of impropriety or constitutes an unfavorable judicial practice, the council may issue a private admonishment to the judge recommending a change in judicial conduct or practice."

[6] The plaintiff also claimed that the trial court improperly concluded that there was clear and convincing evidence that he violated rule 8.4 (4) of the Rules of Professional Conduct, but the Appellate Court declined to review the claim because it was inadequately briefed. *Notopoulos* v. *Statewide Grievance Committee*, supra, 85 Conn. App. 433. The Appellate Court also declined to reach the plaintiff's claim that § 45a-63 violates his first amendment right to free speech because it determined that the plaintiff had failed to preserve the claim properly by raising it before the trial court. Id., 433–34.

In his dissent, Judge Schaller maintained that once the plaintiff had "offered some reasonable explanations of the conduct that he concluded was similar to extortion, the committee had the burden of persuasion on the issue. Clear and convincing evidence is a high standard indeed . . . ."[7] Id., 437. By failing to present any evidence that the plaintiff's accusations were false, he argued, the committee had failed to carry its burden. Id., 439.

On appeal to this court, the plaintiff claims: (1) the committee failed to prove that he had violated rules 8.2 (a) and 8.4 (4) by clear and convincing evidence; and (2) rules 8.2 (a) and 8.4 (4) are unconstitutional as applied to an attorney who is exercising his right to free speech in a personal rather than professional capacity. In support of his claim that the committee failed to satisfy its burden of persuasion, the plaintiff argues that (1) Judge Berman failed to appear personally before the committee to refute the plaintiff's allegations against him, and (2) the only evidence before the

---

[7] In his dissent, Judge Schaller accurately explicated the shifting evidentiary burdens in grievance committee actions when he stated that "the committee bears the initial burden of evidence to prove the ethics violation by clear and convincing evidence. *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 698, 669 A.2d 1202 (1996). When the committee presents sufficient evidence to meet the burden, the burden of evidence shifts to the alleged violator. . . . [A]fter the committee carries its burden, [t]he plaintiff must . . . provide evidence of an objective, reasonable belief that his statements were true. See *Burton* v. *Mottolese*, 267 Conn. 1, 49–52, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). The plaintiff has no burden to carry until the committee presents clear and convincing evidence of the violation. Here, after the plaintiff provides evidence that he had an objective, reasonable belief that his statements were true, the burden shifts back to the committee to rebut that evidence and, ultimately, to carry its burden of persuasion and to convince the finder of fact of the truth of the claimed violation. See, e.g., *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 296–98, 715 A.2d 712 (1998) (holding that committee failed to carry its ultimate burden)." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, supra, 85 Conn. App. 436 (*Schaller, J.*, dissenting).

committee that addressed the plaintiff's allegations was Judge Berman's letter to the committee, which failed to refute the allegations.

The committee responds: (1) the record at the grievance proceeding, which included the plaintiff's " 'wholly conclusory' " accusations and Judge Berman's complaint indicating that the actions he took in relation to the plaintiff were within his power, satisfied the burden to prove by clear and convincing evidence that the plaintiff had acted with knowing or reckless disregard as to the truth or falsity of his statements; and (2) the rules are designed to preserve the government's significant interest in the integrity of the legal system, and an attorney's statement "maligning a judge will carry the same weight with the public regardless of whether the attorney is counsel of record in a case, or personally involved . . . ." That governmental interest, the committee argues, must be balanced against the plaintiff's personal right to free speech. Accordingly, the committee claims that the Appellate Court properly concluded that "there is no indication that rule 8.2 (a), either in its language or commentary, is applicable solely to an attorney acting in his or her professional capacity . . . ." *Notopoulos* v. *Statewide Grievance Committee,* supra, 85 Conn. App. 433.

We agree with the committee that the trial court properly affirmed the committee's finding, by clear and convincing evidence, that the plaintiff had violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct. We further agree with the committee's argument that the Rules of Professional Conduct apply to attorneys acting in both their personal and professional capacities. Moreover, we conclude that the plaintiff's statements impugning the integrity of Judge Berman do not constitute speech protected by the first amendment of the constitution of the United States. Accordingly, we

affirm the judgment of the Appellate Court, upholding the committee's reprimand of the plaintiff.

## I

We first address the plaintiff's claim that the committee failed to meet its burden of proving a violation of rule 8.2 (a). We conclude that the committee's finding that the plaintiff violated the rule was not clearly erroneous.

As a preliminary matter, we set forth the appropriate standards of review. "[I]n reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. . . . Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence. . . . The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof." (Internal quotation marks omitted.) *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 290, 715 A.2d 712 (1998). Clear and convincing proof is a demanding standard "denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) Id., 290–91.

"Although the statewide grievance committee is not an administrative agency . . . the court's review of its conclusions is similar to the review afforded to an administrative agency decision." (Citation omitted.) *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 811, 633 A.2d 282 (1993). "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." Practice Book § 2-38 (f) (5).

"It is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Citation omitted; internal quotation marks omitted.) *Burton* v. *Mottolese*, 267 Conn. 1, 40, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).

When an attorney, subject to sanctions for violating rule 8.2 (a), has "presented no evidence establishing a factual basis for [his or] her claims"; id., 46; the fact finder reasonably may conclude that the attorney's claims against the court "were either knowingly false

or made with reckless disregard as to [their] truth or falsity." (Internal quotation marks omitted.) Id., 51. "[U]nsupported allegations . . . do not give rise to an objective, reasonable belief that the assertions were true." Id., 49; see also *Anthony* v. *Virginia State Bar*, 270 Va. 601, 605, 610, 621 S.E.2d 121 (2005) (attorney's statements accusing various judges of, inter alia, ex parte communication with opposing counsel and " 'conspiracy' " against client on basis of anonymous " 'Deep Throat' " telephone calls and letter were made with "reckless disregard of [their] truth or falsity").

We begin with a review of the plaintiff's allegations. The plaintiff accused Judge Berman of, inter alia: (1) "extort[ing] from the [plaintiff], without legal authority . . . money for his crony Mrs. Levine on January 25, 1999, resorting to threats to impose upon the [plaintiff] a substantial conservator's cash bond or to dispatch a psychiatrist to our residence to examine [the plaintiff's] mother and bill the estate";[8] and (2) funding "a private Marshall Plan for the support, care and feeding of his crony Denny Fuller, [the plaintiff's mother's] court appointed dependent who conferred her with no benefit whatever . . . but . . . line[d] his pockets with more than $3600 of [the plaintiff's mother's] funds in less than [four] months."[9]

The severity of these accusations is comparable to the bias charges leveled against the trial judge in *Burton*. In *Burton*, the plaintiff claimed that the judge improperly had sanctioned her for failing to appear at a hearing,

---

[8] The plaintiff testified to the committee that he believed that Judge Berman had no statutory authority to demand that Levine be paid for her services and argued that only the court-appointed attorney may receive compensation from the ward or the ward's assets under General Statutes § 45a-649 (b).

[9] In its decision, the committee stated that the plaintiff "maintained that [Fuller] conferred no benefit upon the [plaintiff's] mother" and accused Fuller of "manufactur[ing] a bill in the amount of $3,285 during the course of approximately nine weeks." (Internal quotation marks omitted.)

and that the court had engaged in, inter alia, gender bias against her. *Burton* v. *Mottolese*, supra, 267 Conn. 6–7. In response, the trial court ordered the plaintiff to submit an affidavit "specifying each instance of gender bias that the plaintiff was alleging." Id., 7. After receiving the plaintiff's affidavit[10] and conducting a hearing on the charges, the trial court concluded that the plaintiff's allegations were unsubstantiated and that she had engaged in inappropriate conduct toward the court, for which it sanctioned her under rules 8.2 (a) and 8.4 of the Rules of Professional Conduct. Id., 46. This court affirmed the trial court's conclusion that all of the plaintiff's contentions were unsubstantiated, " 'wholly conclusory and without factual support' "; id.; and, therefore, determined that the trial court's finding that the plaintiff had made statements about the court that were false or in reckless disregard of the truth was not clearly erroneous. Id., 51.

As in *Burton*, the plaintiff in the present case presented wholly conclusory accusations without factual support. He claimed that Judge Berman improperly extracted money from the plaintiff without legal authority, but the only evidence he presented of this potentially criminal action was that Judge Berman had demanded that the plaintiff pay fees for court-appointed agents of the Probate Court. His suggestion that Judge Berman's conduct might result in "Medicare fraud" was supported only by Judge Berman's statement that he might dispatch a psychiatrist to the plaintiff's residence to examine the plaintiff's mother, an act that is author-

---

[10] The affidavit alleged, inter alia, that the trial court had demonstrated its bias by: (1) failing to rule on the plaintiff's motion for sanctions against counsel for the defendants in the underlying case; (2) granting meritless motions by opposing counsel; (3) making female plaintiffs in the underlying action feel that male attorneys received preferential treatment; and (4) imposing a sanction for the plaintiff's failure to appeal at a hearing, which was a " 'manifestation of . . . extraordinary vindictiveness . . . .' " *Burton* v. *Mottolese*, supra, 267 Conn. 47.

ized by law. See General Statutes § 45a-132a.[11] The plaintiff's claims that Judge Berman "prostitut[ed] the integrity of his office," had "venal and avaricious" motives, and acted as a "demonstrated financial predator" on behalf of himself and his "cronies" were similarly conclusory and apparently derivative of the plaintiff's disagreement with a number of Judge Berman's decisions over the course of the probate proceedings. Adverse rulings in court proceedings, and even incorrect rulings, do not in and of themselves amount to evidence of illegal or unethical behavior on the part of a judge. See *Burton* v. *Mottolese*, supra, 267 Conn. 49. If the plaintiff was dissatisfied with Judge Berman's conduct or rulings, he had available to him other more appropriate vehicles for complaint. See General Statutes § 45a-63.

In reaching its decision, the committee considered the language of the plaintiff's accusatory letter, the plaintiff's testimony, Judge Berman's complaint, paperwork documenting the relationship between the parties, and the plaintiff's failure to make his allegations through more appropriate judicial channels. The committee, acting as a fact finder, was best able to consider these factors in weighing the credibility of all the evidence before it. Although, as Judge Schaller remarked in his dissenting opinion, it would have been preferable had the committee called witnesses at trial explaining Judge Berman's actions; *Notopoulos* v. *Statewide Grievance Committee*, supra, 85 Conn. App. 438–39; we conclude that the committee's finding by clear and

---

[11] General Statutes § 45a-132a provides in relevant part: "In any matter before a court of probate in which the capacity of a party to the action is at issue, the court may order an examination of any allegedly incapable party by a physician or psychiatrist or, where appropriate, a psychologist, licensed to practice in the state. The expense of such examination may be charged against the petitioner, the respondent, the party who requested such examination or the estate of the alleged incapable in such proportion as the judge of the court determines. . . ."

convincing evidence that the plaintiff violated rule 8.2 (a) was not clearly erroneous.

## II

The plaintiff next claims that, even if the committee properly found by clear and convincing evidence that he had violated rule 8.2 (a), the Appellate Court improperly determined that the rule applied to him in his capacity as a pro se party and not as an attorney representing a client. He further contends that the statements in his letter constituted political criticism of an elected official and are protected by his first and fourteenth amendment rights under the United States constitution. We disagree.

### A

We have previously held, and the plaintiff does not dispute, that the Rules of Professional Conduct apply to attorneys whether they are representing clients or acting as pro se litigants unless the language of the rule or its relevant commentary clearly suggests otherwise. See *Somers* v. *Statewide Grievance Committee*, supra, 245 Conn. 287–88 (rule 3.4 [7] of Rules of Professional Conduct applied to attorney acting in pro se capacity); cf. *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 236, 578 A.2d 1075 (1990) (rule 4.2 of Rules of Professional Conduct, which proscribes communication between attorney and represented party, expressly applies only when attorney is representing client). Additionally, it is well established that "[t]he Rules of Professional Conduct bind attorneys to uphold the law and to act in accordance with high standards in both their personal and professional lives." *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 450, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001); *In the Matter of Presnick*, 19 Conn. App. 340, 345, 563 A.2d 299 ("Whether an attorney represents himself or not, his basic obligation to the court as an attorney remains

the same. He is an officer of the court . . . . Disciplinary proceedings not only concern the rights of the lawyer and the client, but also the rights of the public and the rights of the judiciary to ensure that lawyers uphold their unique position as officers . . . of the court. . . . An attorney must conduct himself or herself in a manner that comports with the proper functioning of the judicial system." [Citation omitted.]), cert. denied, 213 Conn. 801, 567 A.2d 833 (1989); see also *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 679, 646 A.2d 781 (1994); Rules of Professional Conduct, preamble. Neither the language of rule 8.2 (a) nor the commentary associated with it clearly suggests that the rule should apply only to attorneys' professional, as opposed to personal or pro se, statements. We therefore conclude that the Appellate Court properly determined that rule 8.2 (a) of the Rules of Professional Conduct applies to attorneys' statements, whether they are representing clients or acting as pro se litigants.

B

The plaintiff claims, however, that the Rules of Professional Conduct cannot be applied to punish the exercise of free speech when an attorney is acting in a personal capacity.[12] He relies on *Polk* v. *State Bar of Texas*, 374 F. Sup. 784 (D. Tex. 1974), which held that

---

[12] We note that the Appellate Court declined to review the plaintiff's claim that § 45a-63, which provides for the discipline of probate judges for improper conduct, violates his first amendment right to free speech, because the plaintiff failed to preserve his claim at trial and did not ask the court to review the claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. *Notopoulos* v. *Statewide Grievance Committee*, supra, 85 Conn. App. 434; see Practice Book § 60-5. The trial court, however, had addressed the plaintiff's claim that the statements contained in his letter were protected by the first amendment. It is also noteworthy that the committee did not claim in its brief to this court that the claim was unpreserved. Accordingly, we will review the plaintiff's constitutional claim that the accusations in his letter constituted political criticism that was protected by the first and fourteenth amendments.

the Texas State Bar Association could not reprimand attorneys for making constitutionally protected statements in their personal capacity about public officials unless such comments threaten a significant state interest. In *Polk,* the grievance committee reprimanded the plaintiff for professional misconduct after he made derogatory statements at a press conference about Texas public officials. Id., 786.[13] The court in *Polk* reasoned that "[w]here the protections of the [c]onstitution conflict with the efficiency of a system to ensure professional conduct, it is the [c]onstitution that must prevail and the system that must be modified to conform." Id., 788.

The *Polk* decision does *not,* however, contemplate attorney speech made with either knowing falsity or reckless disregard as to its truth or falsity. It is well established that statements critical of public officials that are made "with knowledge of their falsity or in reckless disregard of whether they are true or false" are not protected by the first amendment of the United States constitution. *Garrison* v. *Louisiana,* 379 U.S. 64, 78, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964); see, e.g., *State* v. *Russell,* 227 Kan. 897, 902–904, 610 P.2d 1122 (1980) (when attorney campaigning for office placed political advertisement alleging that district attorney failed to prosecute certain embezzlement cases, which attorney knew or should have known to be false, court rejected suggestion that first amendment precluded discipline for speech); *State ex rel. Nebraska State Bar Assn.* v. *Michaelis,* 210 Neb. 545, 560, 316 N.W.2d 46 (1982)

---

[13] After the plaintiff in *Polk* was arrested and jailed for his failure to appear in court to face charges of driving while intoxicated, the plaintiff accused a "dishonest and unethical district attorney and a perverse judge" of an "awkward attempt" to "assure [him] an unfair trial." Polk informed the media that both the judge and assistant district attorney were aware that the reason he had not shown up for the trial was that the trial had, in fact, been rescheduled for another date. *Polk* v. *State Bar of Texas,* supra, 374 F. Sup. 786.

(when candidate for county attorney placed advertisement alleging misconduct and illegal acts by county attorney and city attorney, which he "knew or should have known with ordinary care" to be false, court concluded that discipline may be imposed over first amendment claim); cf. *State ex rel. Oklahoma Bar Assn.* v. *Porter*, 766 P.2d 958, 969 (Okla. 1988) (attorney had first amendment right to criticize judge for racism in conduct of trial, where "[f]alse speech" was not involved and attorney had "rational basis" for concluding his remarks were factual); see generally *In the Matter of Holtzman*, 78 N.Y.2d 184, 191–92, 577 N.E.2d 30, 573 N.Y.S.2d 39 (1991) (attorney disciplined for releasing information to media before obtaining trial transcript to verify truth or falsity of allegations about judge's conduct).[14]

---

[14] We note that the plaintiff has not identified, much less engaged in an analysis of, several issues implicated by his constitutional claim. For example, our research reveals that several courts have held that "attorneys should be held to a higher standard when leveling criticism that may adversely affect the administration of justice." *In the Matter of Westfall*, 808 S.W.2d 829, 837 (Mo. 1991). Other courts have employed the criminal defamation standard set forth in *Garrison*, which was based on the seminal case of *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) (to prove libel, public official must establish that statement was false or made in reckless disregard of whether it was false). The plaintiff has not addressed the issue of whether this court should apply this higher standard to attorneys or whether our holding in *Burton* v. *Mottolese*, supra, 267 Conn. 46–47, that statements that are wholly conclusory and without factual support are in reckless disregard of the truth implicitly applied this higher standard. Moreover, we note that the court in *New York Times Co.* apparently applied a less deferential standard of review than the clearly erroneous standard to the facts found by the lower court in that case in light of the potential threat to the petitioner's first amendment rights. See *New York Times Co.* v. *Sullivan*, supra, 285. The plaintiff has not discussed this case, however, and has not asked this court to engage in such a deferential review, much less explained what such a review would entail. Accordingly, we apply the *Burton* standard for determining whether a statement made by an attorney about a judge is in reckless disregard of the truth and assume, without deciding, that our review of the facts found by the committee is governed by the ordinary clearly erroneous standard even though this claim implicates the plaintiff's first amendment rights.

As we concluded previously in this opinion, the record in this case contains sufficient evidence of the plaintiff's knowing or reckless disregard as to the truth or falsity of his statements. As a result, we conclude that the plaintiff's statements are not protected by the first amendment. Thus, even if it is assumed that the plaintiff was acting in his personal capacity, rule 8.2 (a) is constitutional as applied to his conduct.

### III

We next consider the plaintiff's claim that the committee improperly found that he had violated rule 8.4 (4) of the Rules of Professional Conduct, which prohibits an attorney from engaging in "conduct that is prejudicial to the administration of justice . . . ." It is well established that "members of the bar [must] conduct themselves in a manner compatible with the role of courts in the administration of justice." *In re Snyder*, 472 U.S. 634, 644–45, 105 S. Ct. 2874, 86 L. Ed. 2d 504 (1985).[15] Several courts have held that when an attorney makes statements that violate rule 8.2 (a) and compromise the integrity of the judiciary, such conduct also constitutes a violation of rule 8.4 (4). See *In the Matter of McClellan*, 754 N.E.2d 500, 502 (Ind. 2001) (attorney who violated rule 8.2 [a] by filing petition for rehearing stating that ramifications of court's decision read like bad joke also violated rule 8.4 [d][16] because petition "demeaned the judiciary and the legal profession"); *In the Matter of Garringer*, 626 N.E.2d 809, 813 (Ind.) ("[u]nwarranted public suggestion by an attorney that a judicial officer is motivated by criminal purposes and considerations does nothing but weaken and erode the

---

[15] We review the plaintiff's claim, even though the Appellate Court determined that it was inadequately briefed, because his claims regarding the violations of rule 8.2 (a) and rule 8.4 (4) share the same factual predicate and are inextricably intertwined.

[16] Rule 8.4 (d) of the Indiana Rules of Professional Conduct is equivalent to rule 8.4 (4) of the Connecticut Rules of Professional Conduct.

public's confidence in the impartial adjudicatory process" [internal quotation marks omitted]), cert. denied, 513 U.S. 826, 115 S. Ct. 93, 130 L. Ed. 2d 44 (1994); *In the Matter of Westfall*, 808 S.W.2d 829, 839 (Mo. 1991) (rule 8.2 [a] violation encompassed rule 8.4 violation when attorney made public comments alleging purposefully dishonest conduct by Court of Appeals judge); *Office of Disciplinary Counsel* v. *Price*, 557 Pa. 166, 177–78, 732 A.2d 599 (1999) (rule 8.2 violations also justified rule 8.4 discipline where attorney, inter alia, made false allegations about judges); cf. *Owen* v. *Carr*, 113 Ill. 2d 273, 281, 497 N.E.2d 1145 (1986) (attorney's letters and memoranda to Judicial Inquiry Board accusing judge of misconduct were protected speech, because it is " 'right and duty' " of attorneys to submit grievances to proper authorities); *In the Matter of Becker*, 620 N.E.2d 691, 694 (Ind. 1993) ("when an attorney is confronted with what appears to be judicial misconduct, the appropriate avenue is the judicial disciplinary process").

We agree with the reasoning of these cases that false statements or statements made in reckless disregard of the truth that disparage a judge erode the public confidence in the judiciary and thereby undermine the administration of justice. Given our conclusion that there was clear and convincing evidence to support the committee's finding that the plaintiff's statements were made in violation of rule 8.2 (a), we likewise conclude that such evidence supports the committee's finding that the plaintiff's statements were made in violation of rule 8.4 (4). In addition, as we have indicated in part II of this opinion, the Rules of Professional Conduct apply to attorneys acting in their individual capacity unless the rule clearly indicates otherwise. Nothing in rule 8.4 (4) indicates that it was not intended to apply to attorneys acting in their individual capacity. Accord-

ingly, even if we assume that the plaintiff was acting in his individual capacity, rule 8.4 (4) applies.

Finally, we have concluded that the plaintiff's statements were not speech protected by the first amendment. Thus, we need not determine whether an attorney's disparaging comments about a judge that do not constitute a violation of rule 8.2 (a) constitutionally may be sanctioned under rule 8.4 (4).[17] Accordingly, we conclude that the committee's finding that the plaintiff also violated rule 8.4 (4) was not clearly erroneous.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[17] Several courts have held that attorneys may be punished under the Rules of Professional Conduct for engaging in derogatory speech toward the judiciary even when the speech is protected by the first amendment. See *Gentile* v. *State Bar of Nevada*, 501 U.S. 1030, 1081–82, 111 S. Ct. 2720, 115 L. Ed. 2d 888 (1991) (O'Connor, J., concurring) ("[l]awyers are officers of the court and, as such, may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech"); *United States* v. *Cooper*, 872 F.2d 1, 3 (1st Cir. 1989) (attorney who "fill[s] a courtroom with a litany of speculative accusations and insults which raise doubts as to a judge's impartiality" may not take refuge in first amendment); *Kentucky Bar Assn.* v. *Waller*, 929 S.W.2d 181, 183 (Ky. 1996) (when attorney filed papers calling judge "lying incompetent ass-hole," court rejected attorney's first amendment challenge to discipline based on need to promote respect for and integrity of judiciary), cert. denied, 519 U.S. 1111, 117 S. Ct. 949, 136 L. Ed. 2d 837 (1997); *In the Matter of Lacey*, 283 N.W.2d 250, 251 (S.D. 1979) (attorney who told newspaper reporter that " 'state courts were incompetent and sometimes downright crooked' " was not protected under first amendment and should have voiced criticisms to state's judicial qualifications commission); see also *Kentucky Bar Assn.* v. *Heleringer*, 602 S.W.2d 165, 168 (Ky. 1980) (by using private grievance procedures, attorneys can avoid casting doubt upon competence and integrity of judiciary). Accordingly, even if we had concluded that it was clearly erroneous for the committee to find that the plaintiff's statements in the present case were in reckless disregard of the truth, it is far from clear that the plaintiff would have prevailed on this claim.