******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., with whom, D'AURIA, J., joins, dissenting. An attorney's statement concerning the qualifications or integrity of a judge does not violate rule 8.2 (a) of the Rules of Professional Conduct[1] unless the statement is false.[2] As a consequence, a truthful statement, even one made in reckless disregard of its truth or falsity, simply does not violate the rule. The reviewing committee of the defendant, the Statewide Grievance Committee, was aware of the falsity requirement and found the statement of the plaintiff, Attorney John W. Mills, which criticized certain judicial decisions, to be false, in violation of rule 8.2 (a), for one singular and specific reason: because "none of the decisions . . . the [plaintiff] took issue with [was] overturned on any appeal." This was the one and only basis identified by the committee in support of its finding of falsity.

The defect in the reviewing committee's reasoning is obvious—the fact that the judicial decisions criticized by the plaintiff were not overturned on appeal comes nowhere close to establishing, by clear and convincing evidence no less, that the plaintiff's criticisms were false. Perhaps because this reasoning does not withstand scrutiny, the majority does not attempt to defend the actual grounds on which the committee relied to support its

---

[1] Rule 8.2 (a) of the Rules of Professional Conduct provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

[2] During oral argument before this court, the parties' counsel expressed agreement that true statements concerning the qualifications or integrity of a judge do not violate rule 8.2 (a). The commentary to the rule confirms that true, "honest and candid opinions" about a judge's qualifications and integrity "[contribute] to improving the administration of justice" and, therefore, fall outside the ambit of the rule. Rules of Professional Conduct 8.2, commentary. Our rule is consistent with the well established principle under the first amendment to the United States constitution that "[t]ruth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned." *Garrison* v. *Louisiana*, 379 U.S. 64, 74, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964). The majority opinion inexplicably fails to include falsity as a separate and distinct element of a rule 8.2 (a) violation. See part II of the majority opinion.

conclusion. Instead, the majority seeks to downplay the entirety of the committee's rationale by calling it a "subsidiary observation . . . ." Part II C of the majority opinion. Under the rubric of "examining all of the evidence in the record to determine whether the . . . committee's finding was well supported"; id.; the majority proceeds to build a case against the plaintiff that disciplinary counsel did not build, and thereby violates a cardinal rule of administrative law by substituting its own, very different reason for the defective reason invoked by the committee to find the plaintiff's statement to be false. The substitute reason supplied by the majority is that, contrary to the plaintiff's statement, the judicial decisions criticized by him were "meaningful and legally supported . . . ." Part II A of the majority opinion.

The majority's conclusion is flawed because, under our rules of practice, judicial review of a disciplinary decision of the defendant or one of its reviewing committees is confined to the record, and "neither the trial court nor this court takes on the function of a fact finder." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 226, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006); see also Practice Book § 2-38 (d) ("[t]he appeal shall be conducted by the court without a jury and shall be confined to the record");[3] Practice Book § 2-38 (f) ("[u]pon appeal, the court shall not substitute its judgment for that of the Statewide Grievance Committee or reviewing committee as to the weight of the evidence on questions of fact").[4] This restrictive standard of review precludes

[3] Practice Book 2-38 (d) provides: "The appeal shall be conducted by the court without a jury and shall be confined to the record. If alleged irregularities in procedure before the Statewide Grievance Committee or reviewing committee are not shown in the record, proof limited thereto may be taken in the court. The court, upon request, shall hear oral argument."

[4] Practice Book § 2-38 (f) provides: "Upon appeal, the court shall not substitute its judgment for that of the Statewide Grievance Committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1)

the majority from considering material that is not in the record, making factual findings that the reviewing committee did not make, and employing reasoning not relied on by the committee. I am unable to join the majority's departure from the principles that govern our judicial review and animate rule 8.2 (a).

My disagreement with the majority runs deeper than a mere difference of opinion over the technical niceties of judicial review of disciplinary decisions made by a reviewing committee. The majority's analysis does more than marshal evidence from the record to support the reviewing committee's factual finding; it uses raw materials buried in the record to construct a brand new edifice based on an analysis that the committee simply never made. The fact that the majority arrives at the same ultimate determination as the committee (i.e., that the plaintiff's statement violated rule 8.2 (a)) does not mean that the majority has adhered to its proper role. What matters is the propriety of the *committee's* analysis. When appellate review properly is limited to the record before the committee, the facts the committee found, and the grounds on which the committee relied to reach its decision in accordance with Practice Book § 2-38 (d) and (f), it is clear that the evidence before the committee was insufficient to support, by clear and convincing proof, its factual finding that the plaintiff made a false statement concerning the integrity of the judiciary in violation of rule 8.2 (a). I therefore respectfully dissent.

I

The factual and procedural history of this case is lengthy and complex, and there is no need to repeat it

in violation of constitutional provisions, rules of practice or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the Statewide Grievance Committee or take such other action as may be necessary. For purposes of further appeal, the action taken by the Superior Court hereunder is a final judgment."

here. In a nutshell, following a protracted and contentious dispute between the plaintiff and Attorney Douglas P. Mahoney over the division of a contingency fee resulting from a wrongful death action, the plaintiff and Mahoney negotiated a settlement agreement through mediation efforts overseen by Superior Court Judge Barbara N. Bellis. The plaintiff submitted to Judge Bellis a written motion for an order to release the disputed funds consistent with the terms of the settlement agreement. In that motion, the plaintiff made the following statement: "While the undersigned genuinely appreciates the sincere efforts of this court [i.e., Judge Bellis] to bring this matter to a close after years of litigation, the plaintiff is nevertheless completely disillusioned and disappointed with the prior judges who have 'heard' this case, and their unwillingness to make any meaningful effort to analyze the facts and the law. Decision after decision was not only legally incorrect, but devoid of *any* meaningful jurisprudence. The plaintiff has opted to resolve this case solely because it has become apparent that, in this instance, for whatever reason, justice is not possible. In thirty years of practice, [the plaintiff has] never seen anything like this, where the rules and the law are simply and totally disregarded." (Emphasis in original.)

Judge Bellis referred the plaintiff to the Office of Chief Disciplinary Counsel, and a subcommittee of the defendant, the reviewing committee, held a hearing to determine whether the plaintiff's statement violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct. At the hearing, the plaintiff was the sole witness, and only two exhibits were admitted into evidence: (1) a letter from Mahoney to the Probate Court and the plaintiff dated May 13, 2014, and (2) a September 16, 2016 motion to disqualify the plaintiff from representing the estate of Connor Kusmit, and the estate's objection thereto, in *Estate of Kusmit* v. *Court of Probate, District of East Haven-North Haven*, Superior Court, judicial district of New Haven, Docket No. NNH-CV-15-6057289-S.[5] In response to questioning before the committee,

[5]The referenced case was an appeal from the decision of Probate Court Judge Michael R. Brandt apportioning $40,000 of the $66,666.66 in

the plaintiff discussed various memoranda of decision issued by the Probate Court and the Superior Court in connection with the fee dispute prior to its settlement, and the reasons why the plaintiff believed that those decisions were wrongly decided. Neither the plaintiff nor disciplinary counsel offered those judicial decisions into evidence or detailed the legal or factual grounds on which the judges relied to arrive at their conclusions in those decisions. The decisions are not part of the certified contents of the record in this matter. See Practice Book § 2-38 (c).

Although the plaintiff's statement did not identify by name any of the judges criticized, the plaintiff testified that his statement referred in relevant part to the following judges: **(1)** Probate Court Judge Michael R. Brandt, who presided over the administration of the estate receiving the wrongful death proceeds and initially apportioned **$40,000** of the **$66,666.66** in attorney's fees to Mahoney, **(2)** Superior Court Judge Matthew E. Frechette, who denied the plaintiff's motions to stay the Probate Court proceedings and to dismiss the Probate Court appeal in connection with the apportionment of attorney's fees, and **(3)** Superior Court Judge Sybil V. Richards, who presided over the Probate Court appeal and, following a trial de novo, issued a memorandum of decision apportioning the attorney's fees in the same amount as had Judge Brandt. As previously indicated, the decisions issued by these judges were not offered or entered into evidence at the disciplinary hearing, and there was no inquiry or other effort at the hearing by disciplinary counsel or the members of the reviewing committee to examine the substance or reasoning of any of those judicial decisions.

For example, in the course of the hearing, disciplinary counsel asked the plaintiff about his motion to dismiss the Probate Court appeal, which had been denied by Judge Frechette. The plaintiff testified that he thought Judge

attorney's fees to Mahoney. Mahoney moved to disqualify the plaintiff from representing the estate in that matter.

Frechette was "a smart person" who "tries to . . . give thought to things." The plaintiff maintained, however, that Judge Frechette's denial of the motion to dismiss was "legally incorrect" and "ignored the current law" because he did not address "one case in particular that Judge [Beverly J.] Hodgson decided, I think it's called *Pink*. And [the case was] cited . . . to Judge Frechette." See generally *McNamara & Goodman* v. *Pink*, 44 Conn. Supp. 592, 696 A.2d 1328 (1997). According to the plaintiff, *Pink* stands for the proposition that, once a settlement check has been deposited "in the attorney's IOLTA account . . . the client does not have a possessory right to the contingency fee. Upon deposit, that is no longer estate money; that's law firm money," such that the Probate Court lacked jurisdiction over the fee dispute. The plaintiff explained that Judge Frechette's memorandum of decision "was legally and factually incorrect and devoid of any meaningful jurisprudence" because it did not address *Pink*.

In response to questioning, the plaintiff also discussed the memorandum of decision authored by Judge Richards apportioning the attorney's fees. The plaintiff explained his belief that Judge Richards' decision was likewise "legally incorrect," made no "meaningful effort to analyze the facts and law," and was "devoid of any meaningful jurisprudence" because, at the evidentiary hearing, "the underlying [Probate Court] decision [was admitted] as a full exhibit over . . . objection, and then . . . [the] decision [subsequently issued by Judge Richards] after all of that is exactly to the dollar of what Judge Brandt said [in the Probate Court]. That's not a trial de novo."

Disciplinary counsel thereafter asked the plaintiff whether he had filed an appeal from the Superior Court decisions at issue, and the following colloquy occurred:

"[The Plaintiff]: I can't recall.

"[Disciplinary Counsel]: Okay. Well, that appeal was sustained, I mean, dismissed, wasn't it? [The Appellate

Court] found that the decision of Judge Richards was correct.

"[The Plaintiff]: I don't believe there was ever a substantive finding that . . . wound up in [an Appellate Court] decision, no.

"[Disciplinary Counsel]: Well, what happened to the appeal?

"[The Plaintiff]: I don't know . . . to be honest with you. I think it was dismissed, I think. I certainly know there's no published opinion on what Judge Richards did."[6]

Disciplinary counsel also elicited testimony from the plaintiff that he "lost all" of his arguments and that none of the challenged decisions was "ever overturned on any kind of appeal or by another judge." At no point in the proceedings did the parties ask the reviewing committee to take judicial notice of the judicial decisions about which the plaintiff testified or the pleadings in those underlying cases.

In closing argument at the hearing, disciplinary counsel argued that the plaintiff's statement violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct because the plaintiff had "made conclusory allegations

---

[6] Construed in context, the plaintiff's testimony that there was "no published opinion on what Judge Richards did" was intended to explain that there was no published Appellate Court decision upholding Judge Richards' judgment on its merits, rather than, as the majority suggests, a reference to Judge Richards' memorandum of decision itself. See footnote 8 of the majority opinion. Insofar as the majority relies on the publication of Judge Richards' memorandum of decision to question the plaintiff's credibility, I note two flaws in the majority's reasoning. First, for the reason just stated, it is apparent that the majority has misconstrued the plaintiff's testimony; the plaintiff was referring to the Appellate Court, not the trial court. Second, the reviewing committee made no credibility findings regarding the plaintiff's testimony, and it is not the role of this court to make credibility findings on appeal. See, e.g., *Notopolous* v. *Statewide Grievance Committee*, supra, 277 Conn. 227 (observing that credibility is issue to be determined by committee on basis of "the witness' conduct, demeanor and attitude," not by appellate court on basis of "the cold printed record" (internal quotation marks omitted)).

against judges in a pleading filed with the court [i.e., the motion for an order filed with Judge Bellis] without any factual support." Disciplinary counsel maintained that the plaintiff had "every opportunity to explain all of the factual information he was relying [on] when he made these allegations against all of these judges. He provided no objective information other than the fact that he couldn't believe that they weren't granting his motion and . . . they were disagreeing with him in their decisions. Even if a judge is wrong and is overturned on appeal, it doesn't mean that he is corrupt or that he has abandoned his obligation to act as a . . . Superior Court judge. . . . [A]nd that hasn't even happened in this case. Not one of the decisions that he complains about has been overturned on appeal. . . . [*T*]*he statement speaks for itself. All you've got to do is read the statement.* You can't make a claim like that about Superior Court judges [who] have completely abandoned their obligations to perform their duties without any evidence, and we haven't heard anything other than, 'I'm not happy with their rulings, how could they rule against me like that?'" **(Emphasis added.)** Disciplinary counsel's position was that the falsity of the plaintiff's statement was on its face obvious and self-proving.

The reviewing committee evidently was persuaded by disciplinary counsel's argument. It issued a written decision concluding that the plaintiff's statement violated rule 8.2 (a) of the Rules of Professional Conduct, which prohibits a lawyer from making "a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." The committee explained its reasoning as follows: "In the [plaintiff's] motion for an order, the [plaintiff] represents that 'decision after decision was not only legally incorrect, but devoid of any meaningful jurisprudence.' The [plaintiff] also represented that 'the rules and the laws are simply and totally disregarded.' *However, none of the decisions or motions the* [*plaintiff*] *took issue with* [*was*] *overturned on any appeal.* The [plaintiff], in making the representations

that he did, made false statements concerning the integrity of the judiciary." (Emphasis added.) The committee further found that the plaintiff's false statement was made with reckless disregard as to its truth or falsity because "[t]he record is clear that the [plaintiff] intended to write the statement that he did, and stood by what he wrote. While the [plaintiff] may not have named any specific judges in the matter, it was clear that the [plaintiff] intended to attack the judiciary without a basis to do so." Lastly, the committee found that the plaintiff's statement "attack[ing] . . . the integrity of the judiciary" also "constitute[d] conduct prejudicial to the administration of justice, a clear violation of rule 8.4 (4) of the Rules of Professional Conduct." The committee therefore reprimanded the plaintiff "for violating rules 8.2 (a) and 8.4 (4)."

The reviewing committee's decision was affirmed by the defendant on review; see Practice Book § 2-35 (k); and the trial court subsequently dismissed the plaintiff's appeal. The Appellate Court affirmed the judgment of the trial court, reasoning that clear and convincing evidence supported the committee's decision because the allegations in the plaintiff's statement "clearly attack the judges' competence and alleged faithfulness to the law, thereby attacking the integrity of the Probate Court and the Superior Court," and because "none of the decisions or motions that the plaintiff took issue with was overturned on appeal." *Mills* v. *Statewide Grievance Committee*, 228 Conn. App. 852, 862–63, 326 A.3d 309 (2024). The Appellate Court concluded that it did not need to resolve the plaintiff's claim that "his statements were true because the courts committed legal error" on the ground that, "even if the plaintiff genuinely believed that the Probate Court and the Superior Court misapplied the law or issued incorrect decisions, he should have raised those issues directly rather than disparaging the courts in a later motion for [an] order." Id., 864. This court granted certification to appeal to determine whether "the Appellate Court properly [upheld] the trial court's dismissal of the plaintiff's appeal from his reprimand

by the defendant . . . on the basis of rule 8.2 (a) of the Rules of Professional Conduct . . . .” *Mills* v. *Statewide Grievance Committee*, 351 Conn. 903, 903–904, 329 A.3d 240 (2025).

## II

The majority affirms the judgment of the Appellate Court, albeit for reasons different than those articulated by the Appellate Court and the reviewing committee. The majority relies on excerpts from the memoranda of decision authored by Judges Frechette and Richards to conclude that the plaintiff’s statement violated rule 8.2 (a) of the Rules of Professional Conduct, even though the memoranda of decision were not admitted into evidence, made part of the record, or relied on by the committee in arriving at its decision. Nonetheless, the majority stakes its conclusion on selective quotations from these decisions contained in Mahoney’s motion to disqualify the plaintiff in the Superior Court and in the defendant’s reply to the plaintiff’s request for review of the decision of the committee to hold that Judges Frechette and Richards “provided the plaintiff with meaningful and legally supported decisions despite [the plaintiff’s] assertions to the contrary.” Part II A of the majority opinion.

The majority’s analysis is flawed because it is substantially and materially based on evidence that is not part of the record in contravention of Practice Book § 2-38 (d). Relatedly, the majority relies on reasoning that appears nowhere in the reviewing committee’s decision and thereby “substitute[s] its judgment for that of the . . . reviewing committee” as to the falsity of the allegations in the plaintiff’s statement in violation of Practice Book § 2-38 (f). When appellate review is properly limited to the contents of the record and the reasons given by the committee, there is insufficient evidence in this case to support the committee’s factual finding that the plaintiff made a false statement in violation of rule 8.2 (a). I would reverse the judgment of the Appellate Court and remand the case to that court with direction to sustain the plaintiff’s appeal.

## A

Rule 8.2 (a) of the Rules of Professional Conduct provides in relevant part that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." As explained in the commentary to the rule, "[a]ssessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice." Rules of Professional Conduct 8.2, commentary. Thus, a lawyer violates rule 8.2 (a) if he or she **(1)** makes a false statement, **(2)** that he or she knows to be false or with reckless disregard as to its truth or falsity, and **(3)** the statement concerns the qualifications or integrity of a judge.

Disciplinary counsel had the initial burden of producing clear and convincing evidence establishing a violation of rule 8.2 (a). See, e.g., *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 226. "Clear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) Id.

Once disciplinary counsel has fulfilled the burden of establishing a violation of rule 8.2 (a), "the burden of evidence shifts to the alleged violator . . . [to] provide evidence of an objective, reasonable belief that his

statements were true." (Internal quotation marks omitted.) Id., 224 n. 7. Importantly, the alleged violator "has no burden to carry until [disciplinary counsel] presents clear and convincing evidence of the violation." Id. After disciplinary counsel has satisfied the threshold burden of proving the three elements constituting a rule violation, and "after the [alleged violator then] provides evidence that he had an objective, reasonable belief that his statements were true, the burden shifts back to [disciplinary counsel] to rebut that evidence and, ultimately, to carry [his] burden of persuasion and to convince the finder of fact of the truth of the claimed violation." Id.

Whether the plaintiff made a false statement is a question of fact. See, e.g., *Cohen* v. *Statewide Grievance Committee*, 339 Conn. 503, 520, 261 A.3d 722 (2021). In reviewing the reviewing committee's factual findings, "neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 226. Judicial review "is similar to the review afforded to an administrative agency decision," and "the court shall not substitute its judgment for that of the . . . reviewing committee as to the weight of the evidence on questions of fact." (Internal quotation marks omitted.) Id., 227. The decision of the committee must be upheld unless the court determines that "the committee's findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." Practice Book § 2-38 (f) (5); see also *Cohen* v. *Statewide Grievance Committee*, supra, 520 ("[f]actual findings of the reviewing committee are reviewed under the clearly erroneous standard").

### B

Resolution of this appeal turns on whether there was clear and convincing evidence in the record to support the reviewing committee's factual finding that the following

allegations in the plaintiff's statement were false:[7] (1) "[d]ecision after decision was not only legally incorrect, but devoid of any meaningful jurisprudence," and (2) "the rules and the laws are simply and totally disregarded."[8] (Emphasis omitted.) The committee found these statements to be false on the sole ground that "none of the decisions or motions the [plaintiff] took issue with [was] overturned on any appeal." Rather than reviewing the ground on which the committee actually relied to arrive at its factual finding regarding falsity, the majority looks under stones buried elsewhere in the record to locate fragmentary traces to support an alternative ground that was not considered, analyzed, or decided by the committee. The following discussion explains why the majority's analysis contravenes the limited standard of review set forth in Practice Book § 2-38 (d) and (f).

1

The record evidence is insufficient to support, by clear and convincing proof, a reasonable inference that the plaintiff made a false statement when he expressed his view that Judges Frechette and Richards issued decisions that were legally incorrect and devoid of meaningful jurisprudence. The memoranda of decision are not in the record, and, without them, it is impossible to find under the present circumstances that the plaintiff's statement was false. Falsity is a relational concept that depends on establishing a material deviation from the truth, and the falsity of a factual statement can be established only by comparing the statement to the reality it allegedly misrepresents. In this case, the memoranda of decision

---

[7] The plaintiff also claims that the reviewing committee erroneously found that that he made the allegations in his statement in reckless disregard of their truth or falsity. Because I conclude that the evidence was insufficient to establish by clear and convincing proof that the plaintiff had violated rule 8.2 (a) by making a false statement, I need not address the sufficiency of the evidence as to the plaintiff's mental state.

[8] These were the only two allegations in the plaintiff's statement that the reviewing committee found to be false. Because judicial review is strictly limited to the violations that the committee *actually found* to exist, it would improperly substitute a reviewing court's judgment for that of the committee to conclude that there were other or additional violations not found by the committee. See Practice Book § 2-38 (f).

criticized by the plaintiff provided the essential points of comparison necessary to demonstrate the falsity of the plaintiff's criticism. Yet, apparently because disciplinary counsel mistakenly believed that the falsity of the plaintiff's statements was either presumed or self-evident, those memoranda were not presented as evidence during the disciplinary proceeding and were not included as part of the record.[9]

Given that the judicial decisions at issue are not in the record, the majority resorts to an unorthodox and indirect method for establishing that the content of those decisions (or at least two of them) proved the falsity of the plaintiff's statement. The majority places great weight in particular on a handful of fragmentary excerpts from Judge Frechette's memorandum of decision quoted in the procedural background section of a motion filed by Mahoney to disqualify the plaintiff from representing the estate in the appeal to the Superior Court of the attorney's fee dispute.[10] Unlike the actual decision issued by Judge Frechette, Mahoney's motion to disqualify is in the record, and, although neither the motion nor its reference to Judge Frechette's decision was relied on directly or indirectly as the basis for the reviewing committee's finding of a rule violation, the majority contends that these "limited portions of [Judge Frechette's] decision [in Mahoney's motion], in addition to the other evidence in the record, which includes the plaintiff's testimony, suffice to support the reviewing committee's finding that the plaintiff violated rule 8.2 (a) of the Rules of Professional Conduct." Footnote 7 of the majority opinion.

The majority's analysis is flawed in multiple respects. First, as I will discuss in part II B 2 of this opinion, the

[9] Disciplinary counsel's position was that the plaintiff's "statement speaks for itself," and "[a]ll [the reviewing committee had] to do [was] read the statement" to find a violation of rule 8.2 (a) of the Rules of Professional Conduct.

[10] In his motion, Mahoney argued that the plaintiff could not serve as counsel because he was a necessary witness in the fee dispute and also had violated a court order requiring him to "hold the disputed fee amount of $66,666.66 in trust" until resolution of the fee dispute.

reviewing committee did not rely on the plaintiff's testimony or the memoranda of decision authored by Judges Frechette and Richards to find the plaintiff's statement to be false, and the committee's decision contains no suggestion whatsoever that this material played any role in its factual finding. Although judicial review includes "the whole record"; Practice Book § 2-38 (f) (5); whole record review does not permit an appellate court to substitute its own judgment as to the legal significance of those facts for that of the committee. In my view, the majority engages in precisely the kind of post hoc rationalization of the underlying committee decision that it acknowledges is impermissible under administrative law principles. Moreover, turning judicial review of administrative decisions on its head, the majority relieves the committee of its responsibility to articulate the basis for an alleged rule violation because this court will do the work to comb through the record to make the required findings.

Second, and of equal importance, the majority conflates the reviewing committee's factual finding as to falsity with the committee's factual finding as to whether the plaintiff made a false statement with the requisite mental state (i.e., knowingly or recklessly). The committee did not rely on the plaintiff's testimony to arrive at its factual finding regarding falsity; it relied solely on the evidence demonstrating that "none of the decisions or motions the [plaintiff] took issue with [was] overturned on any appeal." Only after finding the plaintiff's statement to be false did the committee consider the plaintiff's testimony, finding that "[t]he record is clear that the [plaintiff] intended to write the statement that he did, and stood by what he wrote. While the [plaintiff] may not have named any specific judges in the matter, it was clear that the [plaintiff] intended to attack the judiciary without a basis to do so" and, therefore, that he made his statement "with reckless disregard as to its truth . . . [in] violation of rule 8.2 (a) of the Rules of Professional Conduct." It is the majority, not the committee, that finds the plaintiff's statement to be false because the plaintiff's hearing testimony demonstrates that the

statement was "grounded in rumor, speculation, and apparent frustration with decisions that were not in his favor."[11] Part II A of the majority opinion. In doing so, the majority impermissibly "takes on the function of a fact finder." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 226.

Third, the quotations from Judge Frechette's memorandum of decision that Mahoney selected in support of his motion to disqualify, which the majority relies on to uphold the decision of the reviewing committee on different grounds, do not come close to providing a sufficient evidentiary basis to conclude, by clear and convincing evidence no less, that Judge Frechette's decision was legally correct, contained meaningful jurisprudence, and regarded the rules and the law. In fact, the excerpt from Judge Frechette's memorandum of decision quoted in Mahoney's motion is unaccompanied by any citation to legal authority and therefore does not prove that the allegations in the plaintiff's statement were false in violation of rule 8.2 (a).[12] Moreover, even if the quotations cited by Mahoney had contained legal support, that evidence would not demonstrate that Judge Frechette's decision was legally correct, contained meaningful jurisprudence, and considered the relevant legal principles. To resolve that issue, it would be necessary to carefully consider the legal arguments raised by the parties in support of their respective claims. The record reflects that the plaintiff's legal claim was that the Probate Court did not have jurisdiction to resolve the fee

[11] Notably, the plaintiff was not charged with violating rule 8.2 (a) on the basis of his testimony before the reviewing committee. The committee found the plaintiff's statement to be false for one reason and one reason only—because "none of the decisions or motions the [plaintiff] took issue with [was] overturned on any appeal."

[12] I do not intend to suggest that Judge Frechette's memorandum of decision failed to cite any legal authority or was devoid of meaningful jurisprudence. My point is that the record in this disciplinary proceeding does not contain any evidence one way or the other and therefore does not supply an evidentiary basis for inferring that the plaintiff's statements were false.

dispute by apportioning the total amount of attorney's fees between the plaintiff and Mahoney. The quoted material is focused on the Probate Court's jurisdiction to determine and approve the total amount of the attorney's fees owed by the estate, not the Probate Court's jurisdiction to apportion the total amount of those fees in resolution of the fee dispute between the plaintiff and Mahoney. Although the memorandum of decision refers to Mahoney's request for fees, it does not identify a legal basis, much less a "meaningful jurispruden[tial]" basis, establishing the Probate Court's jurisdiction to adjudicate the division of fees between two attorneys.

With respect to Judge Richards' memorandum of decision, the majority seeks to import it into the record via quoted material contained in the defendant's reply to the plaintiff's request for review, which was filed after the reviewing committee already had issued its decision. See Practice Book § 2-35 (k) (providing for review by Statewide Grievance Committee "[w]ithin thirty days of the issuance to the parties of the final decision by the reviewing committee"). Because these quotations were not in the record at the time the reviewing committee found the plaintiff's statement to be false, the committee did not and could not have relied on this information to arrive at its factual finding. For the same reason, the majority cannot rely on this material, post hoc, to uphold the decision of the committee.

When judicial review is confined to the record, it is clear to me that the evidence before the reviewing committee was insufficient to establish by clear and convincing proof that the allegations in the plaintiff's statement were false. Assuming, without deciding, that the allegations in the plaintiff's statement concerned the integrity of the judiciary[13] and were not the expression of an opinion protected by the first amendment to the United States

[13] The plaintiff's statement, which did not identify any judge by name, focused on the quality of the judges' decisions, not the moral character of the judges themselves. The plaintiff does not challenge the reviewing committee's finding that the allegations in his statement concerned the judges' integrity, however, so I do not address the issue.

constitution,[14] I note that the mere fact that the judicial decisions criticized by the plaintiff were not overturned on appeal is not enough to demonstrate the falsity of the plaintiff's statement. Not every judicial decision that has not been overturned on appeal is ipso facto legally correct and meaningfully analyzed, especially if appellate review was unavailable or the substantive merits of the issue decided never were reached.[15] At the very least, unless a judicial decision has been affirmed on its substantive merits, a fact finder cannot assess whether it was legally correct and meaningfully analyzed without examining the full text of the relevant memorandum of decision and considering the claims raised by the parties, the facts in the record, and the prevailing case law. The committee did not and could not have conducted the requisite analysis because neither the pleadings nor the memoranda of decision criticized by the plaintiff were admitted into evidence. The committee's factual finding as to the falsity of the plaintiff's statement is unsupported by

[14] In the context of defamation law, this court has recognized the distinction between actionable statements of fact and protected statements of opinion. See, e.g., *NetScout Systems, Inc.* v. *Gartner, Inc.*, 334 Conn. 396, 410, 223 A.3d 37 (2020) ("[t]o be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion" (internal quotation marks omitted)). Likewise, in attorney disciplinary proceedings, courts have held that "statements impugning the integrity of a judge may not be punished unless they are capable of being proved true or false; statements of opinion are protected by the [f]irst [a]mendment unless they 'imply a false assertion of fact.'" *Standing Committee on Discipline* v. *Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995); see also *Attorney Disciplinary Board* v. *Weaver*, 750 N.W.2d 71, 82 (Iowa 2008) ("[a]lthough statements of opinion are not automatically protected by the [f]irst [a]mendment, 'a statement of opinion relating to matters of public concern [that] does not contain a provably false factual connotation will receive full constitutional protection'"), quoting *Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990). The issue of whether the plaintiff's statement was one of fact or opinion was not raised by the parties before the reviewing committee or on appeal before this court, and, therefore, I do not address it.

[15] The plaintiff testified that he was precluded from obtaining appellate review of the substantive merits of the adverse decisions for a variety of reasons, such as the lack of a final judgment, mootness, and other technical deficiencies that either prevented him from filing appeals or resulted in the dismissal of the appeals filed.

the record evidence and, therefore, clearly erroneous.

The defendant appears to contend that, pursuant to *Burton* v. *Mottolese*, 267 Conn. 1, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004), *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 218, and *Statewide Grievance Committee* v. *Burton*, 299 Conn. 405, 10 A.3d 507 (2011), the falsity of the plaintiff's statement may be presumed, and the burden was on the plaintiff to rebut the presumption of falsity by producing objective evidence establishing the truth of his statement. I do not construe our case law so broadly. In *Burton* v. *Mottolese*, supra, 49–50, this court held that an attorney's statement accusing a judge of gender bias was false because, among other reasons, the attorney "knowingly misrepresented to the court in [an] affidavit that [certain female plaintiffs in the underlying case] had commented on the preferential treatment the males involved in the underlying case were receiving." At an evidentiary hearing, however, "the trial court credited the testimony of [one of the female plaintiffs] denying that she had ever made allegations of gender bias against the court, over the testimony of the [attorney]." Id., 51. Because there was evidence in the record to support the finding of falsity, "the trial court reasonably could have concluded that the [attorney] violated [rule] 8.2 . . . ." Id. The court did not hold that the alleged violator in a disciplinary proceeding has the burden of demonstrating that the statements at issue are true, although I acknowledge that it also does not express the contrary holding.

In *Notopolous* v. *Statewide Grievance Committee*, supra, 277 Conn. 218, this court explicitly recognized that "[t]he burden is on [disciplinary counsel] to establish the occurrence of an ethics violation by clear and convincing proof"; (internal quotation marks omitted) id., 226; and confirmed that the alleged violator "has no burden to carry until [disciplinary counsel] presents clear and convincing evidence of the violation." Id., 224 n.7. In that case, a reviewing committee of the Statewide Grievance Committee determined that an attorney's letter accusing

a Probate Court judge of being a "financial predator" and extorting money from an estate without legal authority; (internal quotation marks omitted) id., 221 n.4; violated rules 8.2 (a) and 8.4 (4) of the Rules of Professional Conduct. See id., 219–20. On appeal, the attorney claimed that there was insufficient evidence to establish the violations by clear and convincing proof because the only evidence presented to the reviewing committee was the letter and the attorney's testimony regarding the letter. See id., 222–25. This court disagreed, concluding that the record evidence, which included "the language of the [attorney's] accusatory letter, the [attorney's] testimony, [the Probate Court judge's] complaint, paperwork documenting the relationship between the parties, and the [attorney's] failure to make his allegations through more appropriate judicial channels"; id., 230; belied the attorney's allegations of extortion by demonstrating that the Probate Court judge "had demanded that the [attorney] pay fees for court-appointed agents of the Probate Court" as authorized by law. Id., 229. Moreover, the only factual support for the attorney's allegations concerning the Probate Court judge's "potentially criminal action"; id.; was the attorney's "disagreement with a number of [the judge's] decisions over the course of the probate proceedings," which did not in and of itself "amount to evidence of illegal or unethical behavior on the part of [the] judge." Id., 230. Accordingly, this court concluded that "the [reviewing] committee's finding by clear and convincing evidence that the [attorney] violated rule 8.2 (a) was not clearly erroneous." Id., 230–31.

*Notopolous* did not place the burden on the attorney to establish the truth of his statement. To the contrary, as I have indicated, this court emphasized that "[t]he burden is on [disciplinary counsel] to establish the occurrence of an ethics violation by clear and convincing proof"; (internal quotation marks omitted) id., 226; and plainly stated that the attorney "has no burden to carry until [disciplinary counsel] presents clear and convincing evidence of the violation." Id., 224 n.7. A violation of rule 8.2 (a) includes proof of falsity, and I read *Notopolous*

to hold that there was sufficient evidence for the reviewing committee to find by clear and convincing proof that the attorney's allegations of extortion were false because there was evidence in the record that the money demanded by the Probate Court judge was for legitimate Probate Court fees and, therefore, not extortionate. See id., 229–30. Having fulfilled its burden of production as to all elements of the violation, including falsity of the statement, the burden of production then shifted to the attorney to provide "an objective, reasonable belief that the assertions [in his letter] were true." (Internal quotation marks omitted.) Id., 228. Because the attorney failed to fulfill his burden of establishing that he had an objective, reasonable belief in the truth of his statement, it was reasonable for the reviewing committee to infer that the attorney made the false statement either knowing it was false or in reckless disregard of its truth or falsity.

This burden shifting framework makes sense if applied correctly. Once disciplinary counsel has adduced sufficient evidence to establish the actus reus of a violation of rule 8.2 (a) (i.e., that an attorney made a false statement concerning the qualifications or integrity of a judge), it is reasonable for the fact finder to infer that the attorney made the false statement with the requisite mens rea (i.e., knowingly or recklessly) in the absence of proof to the contrary. After all, it is the speaker of the statement who should know whether there was "an objective basis for the [statement]" and is in the best position to produce that information.[16] *Statewide Grievance Com-*

---

[16]The majority concludes that the plaintiff abandoned his claim for the adoption of a subjective test as to knowledge or recklessness consistent with *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). See footnote 2 of the majority opinion; see also *New York Times Co.* v. *Sullivan*, supra, 279–80 ("[t]he constitutional guarantees require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not"). I need not address the issue and will assume, solely for the purpose of my analysis in the present case, that the objective test applies.

*mittee* v. *Burton*, supra, 299 Conn. 413.[17] Thus, it may be reasonable for the reviewing committee to infer that an attorney who makes a false statement concerning the qualifications or integrity of a judge did so either knowingly or recklessly, unless the attorney can present evidence to establish a factual basis for his or her claims. See *Notopoulous* v. *Statewide Grievance Committee*, supra, 277 Conn. 227–28.

The foregoing legal analysis is strongly reinforced by the constitutional principles that are implicated by rule 8.2 (a). Construing our precedent to require an attorney affirmatively to establish the truth of his or her statement concerning the qualifications or integrity of a judge jeopardizes the free expression of core political speech protected by the first amendment. As the United States Supreme Court stated in *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), "[a] rule compelling the critic of official conduct to guarantee the truth of all his factual assertions . . . leads to a comparable self-censorship. Allowance of the defense of truth, with the burden of proving it on the [speaker], does not mean that only false speech will be deterred. . . . Under such a rule, would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. . . . The rule thus dampens the vigor and limits the variety

[17] In *Statewide Grievance Committee* v. *Burton*, supra, 299 Conn. 405, this court also characterized the burden shifting framework in terms of the attorney's mental state, stating that "[a]n attorney asserting allegations of corruption against a judge must have a reasonable, objective belief in the truth of the statements. In the absence of such a belief, the court will infer that the allegations were either false or made in reckless disregard [of their] truth or falseness. . . . As this court held in *Notopolous*, in cases in which an attorney is subject to sanctions for violating rule 8.2 (a), [disciplinary counsel] must first present evidence of misconduct sufficient to satisfy [the] burden of proving [the] case by clear and convincing evidence. . . . If [disciplinary counsel] sustains [that] burden, then the burden of persuasion shifts to the [attorney] to provide proof of an objective and reasonable basis for the allegations." (Citations omitted.) Id., 412–13.

of public debate. It is inconsistent with the [f]irst and [f]ourteenth [a]mendments." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 279; see also *Philadelphia Newspapers, Inc.* v. *Hepps*, 475 U.S. 767, 776, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986) ("the allocation of the burden of proof will determine liability for some speech that is true and some that is false, but *all* of such speech is *unknowably* true or false," and, when "the scales are in such an uncertain balance . . . the [c]onstitution . . . tip[s] [the balance] in favor of protecting true speech" on matters of public concern (emphasis in original)). Unduly burdening the speech of attorneys, who are "the very class of people in daily contact with the judicial system" and "most calculated to be intimately familiar with this aspect of the government process," not only infringes on attorneys' first amendment rights to criticize the government, but also on "the public's [f]irst [a]mendment right to hear what [the attorney] has to say . . . clearly strik[ing] at the center of the concerns of the [f]irst [a]mendment . . . ." *State ex rel. Oklahoma Bar Assn.* v. *Porter*, 766 P.2d 958, 967 (Okla. 1988); see also *In re Green*, 11 P.3d 1078, 1085 (Colo. 2000) ("[r]estrictions on attorney speech burden not only the attorney's right to criticize judges, but also hinder the public's access to the class of people in the best position to comment on the functioning of the judicial system").

Finally, even if, as the defendant suggests, our case law may be construed to relieve disciplinary counsel of the burden of producing evidence demonstrating the falsity of an attorney's statement concerning the qualifications or integrity of a judge, I would strictly limit any such presumption of falsity to unsubstantiated allegations of judicial corruption, bias, or criminality. See, e.g., *Statewide Grievance Committee* v. *Burton*, supra, 299 Conn. 412–13 (corruption); *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 229–30 (criminal conduct); *Burton* v. *Mottolese*, supra, 267 Conn. 46 (bias). Such generalized allegations are "at or near the very top in seriousness, for [they kill] the very soul of judging—fairness." (Internal quotation marks omitted.) *Burton*

v. *Mottolese*, supra, 49. Moreover, wholly conclusory allegations of judicial corruption, bias, or criminality are easy to make but difficult to disprove. Cf. *Langadinos* v. *American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000) (requiring specificity when pleading civil rights violations because "charges of discriminatory intent are difficult to disprove and can greatly harm a defendant's reputation").

The present case does not involve unsubstantiated allegations of judicial corruption, bias, or criminality. Instead, the plaintiff alleged that "[d]ecision after decision was not only legally incorrect, but devoid of any meaningful jurisprudence," and that "the rules and the laws are simply and totally disregarded." (Emphasis omitted.) As the United States Supreme Court has recognized, alleging that a judge's decision was "wrong on [the] law" is not the same as alleging that a judge is "corrupt or venal or stupid or incompetent." *In re Sawyer*, 360 U.S. 622, 635, 79 S. Ct. 1376, 3 L. Ed. 2d 1473 (1959); see id. (The evidence was insufficient to establish that the attorney impugned the judge's integrity by alleging that he was "wrong on [the] law" because such an allegation was of "no matter; appellate courts and law reviews say that of judges daily, and it imputes no disgrace. Dissenting opinions in [the United States] [R]eports are apt to make [such] speech look like tame stuff indeed."). Allegations that judicial decisions are legally incorrect, devoid of meaningful jurisprudence, and in disregard of the rules and the law "are the staple of appellate briefs, and cannot without more constitute ethical violations." *Berry* v. *Schmitt*, 688 F.3d 290, 304 (6th Cir. 2012); see also *United States* v. *Brown*, 72 F.3d 25, 29 (5th Cir. 1995) ("[a]ttorneys should be free to challenge, in appropriate legal proceedings, a court's perceived partiality without the court misconstruing such a challenge as an assault on the integrity of the court").

Given the nature of the allegations in the plaintiff's statement, there is no rebuttable presumption of falsity, and, consequently, disciplinary counsel bore the burden of producing evidence demonstrating that the plaintiff's

allegations that "[d]ecision after decision was not only legally incorrect, but devoid of any meaningful jurisprudence," and that "the rules and the laws are simply and totally disregarded" were false. **(Emphasis omitted.)** For the reasons explained herein, disciplinary counsel failed to fulfill his burden of production, and the evidence in the record is insufficient to support the reviewing committee's factual finding that the plaintiff had made a false statement in violation of rule 8.2 (a) of the Rules of Professional Conduct.

2

I am confident that the reasons set forth in part II B 1 of this opinion provide a basis for reversal without engaging in further analysis. I am also convinced, however, that reversal is required for an additional reason. Even if the record could somehow be construed to contain evidence of falsity based on the plaintiff's testimony and the content of memoranda of decision that were never made part of the record, a reviewing court nonetheless is precluded from "substitut[ing] its [own] judgment for that of the . . . reviewing committee as to the weight of the evidence on questions of fact." **(Internal quotation marks omitted.)** *Notopoulos* v. *Statewide Grievance Committee*, supra, 277 Conn. 227; accord Practice Book § 2-38 (f). This prohibition bars a reviewing court from relying on facts not found or reasoning not set forth in the committee's decision, regardless of whether it is reversing or affirming the committee's decision.

Although there is no Connecticut precedent directly on point, I find persuasive the analysis of the United States Supreme Court in *Securities & Exchange Commission* v. *Chenery Corp.*, 318 U.S. 80, 63 S. Ct. 454, 87 L. Ed. 626 (1943) (*Chenery*). In *Chenery*, the United States Supreme Court held that "[t]he grounds [on] which an administrative order must be judged are those [on] which the record discloses that its action was based," as reflected by "the [agency's own] opinion." Id., 87. Confining judicial review to the reasons articulated by the agency does "not disturb the settled rule that, in reviewing the decision of

a lower court, it must be affirmed if the result is correct although the lower court relied [on] a wrong ground or gave a wrong reason" because, when "the correctness of the lower court's decision depends [on] a determination of fact [that] only a jury could make but [that] has not been made, the appellate court cannot take the place of the jury. Like considerations govern review of administrative orders. If an order is valid only as a determination of policy or judgment [that] the agency alone is authorized to make and [that] it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude [on] the domain [that the legislature] has exclusively entrusted to an administrative agency." (Internal quotation marks omitted.) Id., 88.

The *Chenery* doctrine, as it is commonly known, is a foundational and "now-bedrock principle" of administrative law. *Food & Drug Administration* v. *Wages & White Lion Investments, LLC*, 604 U.S. 542, 587, 145 S. Ct. 898, 221 L. Ed. 2d 436 (2025); see also *Calcutt* v. *Federal Deposit Ins. Corp.*, 598 U.S. 623, 629, 143 S. Ct. 1317, 215 L. Ed. 2d 557 (2023) ("[a] reviewing court . . . is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry" (internal quotation marks omitted)). Under the *Chenery* doctrine, judicial review is limited to "the reasons [the agency] actually articulate[d]," and courts "will not affirm based on evidence that may appear in the record but that was not relied on in the [agency's] decision because [they] cannot know how the [agency] would have viewed evidence [it] did not analyze. . . . To assume a hypothetical basis for the [agency's] determination, even one based in the record, would usurp [the agency's] role." (Citation omitted.) *Lin* v. *Dept. of Justice*, 428 F.3d 391, 400 (2d Cir. 2005); see also *Bagdonas* v. *Dept. of Treasury*, 93 F.3d 422, 426 (7th Cir. 1996) ("The . . . court has no power to 'cure' the agency's failure to fulfill its responsibilities by combing the record on its own in search of a theory that might support the agency's decision. *Chenery* forbids such judicial [second-guessing] . . . .").

This court has cited *Chenery*'s progeny with approval and stressed the importance of limiting judicial review to the precise grounds articulated by an administrative agency in support of its decision. In *Lee* v. *Board of Education*, 181 Conn. 69, 434 A.2d 333 (1980), this court stated that "[a] court reviewing an administrative determination cannot engage in surmise and conjecture to determine whether the decision was lawfully reached." Id., 82, citing *Securities & Exchange Commission* v. *Chenery Corp.*, 332 U.S. 194, 196–97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947) (*Chenery II*). In *Chenery II*, the United States Supreme Court reiterated the "simple but fundamental rule of administrative law . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Securities & Exchange Commission* v. *Chenery Corp.*, supra, 332 U.S. 196. Consistent with the *Chenery* doctrine, the court in *Lee* declined to supply facts not found and legal conclusions not reached by the administrative agency. Instead, the court reversed the decision of the agency and remanded for further proceedings, in keeping with the bedrock principle that it is the role of the agency, not the reviewing court, to try the case, to find the facts, and to apply the law. See *Lee* v. *Board of Education*, supra, 81–82 and n.12, 84.

As the majority correctly observes, an administrative agency is not required to articulate the basis for its decision with "the degree of analytical exposition or stylistic precision expected of an appellate court decision." Part II C of the majority opinion. And, if the basis of an administrative agency's decision is ambiguous or unclear, a reviewing court may rely on the "evidence in the administrative record to support [the agency's] conclusion." *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, 343 Conn. 62, 83, 272 A.3d 639 (2022); see id., 82–83 ("[a]lthough the board did not

issue a written decision explaining the bases on which it determined that the defendant was suitable to receive a pistol permit, there is substantial evidence in the administrative record to support its conclusion"). However, "[w]hen an administrative agency specifically states its reasons, the court should go no further because it could reasonably be inferred that this was the extent of its findings. To go beyond those stated reasons invades the [fact-finding] mission of the agency by allowing the court to cull out reasons that the agency may not have found to be credible or proven." (Internal quotation marks omitted.) *Gibbons* v. *Historic District Commission*, 285 Conn. 755, 771, 941 A.2d 917 (2008); cf. *Commission on Human Rights & Opportunities ex rel. Pizzoferrato* v. *Mansions, LLC*, 354 Conn. 273, 287–88, A.3d (2026) (declining to imply factual finding in decision when it was not included either expressly or by implication); *Channon* v. *Sanford Co.*, 70 Conn. 573, 581–82, 40 A. 462 (1898) (same).

The observation that a reviewing committee is not an administrative agency is true but misses my point. With full awareness of that difference, this court nonetheless has emphasized that the same principles of judicial review apply in both contexts. Thus, "the court's review of [a reviewing committee's] conclusions is similar to the review afforded to an administrative agency decision," and a reviewing court is precluded from "substitut[ing] its [own] judgment for that of the . . . reviewing committee as to the weight of the evidence on questions of fact."[18] (Internal quotation marks omitted.) *Notopoulos*

---

[18] The majority declines to apply the *Chenery* doctrine because the reviewing committee "is not an administrative agency," and "reliance on a doctrine rooted in judicial deference to a coordinate branch of government is not well suited for resolving the present dispute." Part II C of the majority opinion. This astute observation about the separation of powers principles that animate judicial review of executive agency decisions might be a good reason for this court not to follow the bedrock principles of administrative law when reviewing decisions of the committee. We could, instead, undertake some form of de novo review of the committee's decision, or treat the committee strictly as a fact finder and come to our own conclusions about whether an attorney

v. *Statewide Grievance Committee*, supra, 277 Conn. 227. Here, the reviewing committee clearly and unequivocally articulated the factual basis for its decision, finding that the allegations in the plaintiff's statement were false for one reason: because the undisputed evidence in the record established that "none of the decisions or motions the [plaintiff] took issue with [was] overturned on any appeal." Because the committee specifically stated the basis for its factual finding, it is reasonable to "[infer] that this was the extent of its findings," and "[t]o go beyond [that] stated [reason] invades the [fact-finding] mission of the [committee] . . . ." (Internal quotation marks omitted.) *Gibbons* v. *Historic District Commission*, supra, 285 Conn. 771. Under these circumstances, our precedent teaches that it is not the proper role of the court to comb the record to find factual support for a different reason why the plaintiff's statement could be deemed false—because the memoranda of decision authored by Judges Frechette and Richards were legally

violated the rules of professional responsibility, with no deference to the committee's legal determination. After all, the defendant does not have exclusive authority to investigate and determine attorney misconduct; the judges of the Superior Court have inherent authority "to supervise the conduct of their own officers . . . ." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 267 Conn. 27; see also *Persels & Associates, LLC* v. *Banking Commissioner*, 318 Conn. 652, 672, 122 A.3d 592 (2015) ("[r]egulation of the actual practice of law . . . remains the sole province of the judiciary").

But, for better or for worse, that is not the course that we have taken; our rules of practice and our case law have instead codified and applied the bedrock principles of administrative law to review disciplinary decisions made by the defendant and its reviewing committees. Compare Practice Book § 2-38 (d) and (f), with General Statutes § 4-183 (i) and (j); see also *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 234, 578 A.2d 1075 (1990) ("[a]ppeals to the court from the determinations of administrative, legislative and *quasi-judicial* bodies are limited to a review of the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct" (emphasis added)). Regardless of its origins in the separation of powers doctrine, the *Chenery* doctrine effectuates the commands of Practice Book § 2-38 (d) and (f) to confine judicial review "to the record" and to refrain from substituting the court's own "judgment for that of the . . . reviewing committee as to the weight of the evidence on questions of fact." Having codified and adopted these rules, we are bound to follow them.

correct and cited meaningful jurisprudence. The committee was not asked to and did not find the plaintiff's statement to be false for this reason, and the majority cannot "usurp [the committee's] role" by providing an alternative, "hypothetical basis for the [committee's] determination, even one based in the record . . . ." *Lin* v. *Dept. of Justice*, supra, 428 F.3d 400.

### III

When appellate review is confined to the evidence in the record, the facts the reviewing committee found, and the conclusions the committee reached in accordance with our rules of practice and prevailing case law, I conclude that the evidence was insufficient to establish, by clear and convincing proof, that the plaintiff had made a false statement of fact concerning the integrity of a judge in violation of rule 8.2 (a) of the Rules of Professional Conduct. Although I would reverse the judgment of the Appellate Court upholding the dismissal of the plaintiff's appeal from the decision of the committee, I wish to make clear that I do not approve of the allegations in the plaintiff's statement. In my view, the allegations were intemperate and inappropriate. Nor do I believe that attorneys who criticize judges or their judicial decisions are immune from discipline, particularly when those criticisms are factually incorrect, personally abusive, or otherwise prejudicial to the administration of justice. Even without being demonstrably false, such statements may violate rule 8.4 (4) of the Rules of Professional Conduct, which provides in relevant part that "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct that is prejudicial to the administration of justice . . . ."[19] Additionally, depending on the nature of the allegations and the context in which they are made, they may run afoul of other disciplinary rules governing attorney conduct. See, e.g., Rules of Professional Conduct 3.1 ("[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue

---

[19] The committee found that the plaintiff's statement violated rule 8.4 (4), and, as the majority observes, that determination has not been contested on appeal. See footnote 2 of the majority opinion.

therein, unless there is a basis in law and fact for doing so that is not frivolous"); Rules of Professional Conduct 3.5 (4) ("[a] lawyer shall not . . . [e]ngage in conduct intended to disrupt a tribunal or ancillary proceedings such as depositions and mediations"); Rules of Professional Conduct 3.6 (a) ("[a] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter"). Requiring disciplinary counsel to fulfill the burden under rule 8.2 (a) of proving, by clear and convincing evidence, that an attorney knowingly or recklessly made a false statement concerning the qualifications or integrity of a judge should not be understood to grant attorneys carte blanche to make unfounded or grossly incendiary statements disparaging judges or their decision-making.

Because I disagree with the majority that the record evidence was sufficient to support, by clear and convincing proof, the reviewing committee's factual finding that the plaintiff had made a false statement concerning the integrity of the judiciary in violation of rule 8.2 (a) of the Rules of Professional Conduct, I dissent.